JOYCE JOHNSON, Appellant, *v.* STEEL INCORPO-RATED, a Nevada Corporation; SOPHIA WEINER aka SOPHIE WEINER; CLYDE T. TURNER; and STANLEY JOHNSON, Respondents.

No. 9093

July 26, 1978                              581 P.2d 860

*Galane & Tingey* and *James J. Jimmerson,* Las Vegas, for Appellant.

*John Peter Lee,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

The principal issue presented in this divorce appeal is whether the district judge abused his discretion in distributing the community property of the parties and in fixing the alimony award.

1. The parties had been married about 20 years when the decree was entered, granting Joyce a divorce. She was then 39 years old and her husband, Stanley, 40.

There were two minor children of the marriage: Kristine, age 14, and Kara, age 7. The elder daughter had a chronic medical condition (curvature of the spine) which required supervision and medical care for an indefinite period.

Joyce was married at the age of 19, and had never worked outside the home nor acquired any marketable skills which would enable her to earn a living. Stanley, in the words of the district judge, during marriage had "acquired the skills of his trade, primarily from working in the trade itself. Through his efforts he has built a thriving business in a highly competitive [field]".

The court below ordered Stanley to pay the community debts, $7,500 in attorneys' fees, and awarded Joyce custody of the two children and $250 per child per month child support, plus medical expenses. The court also awarded Joyce alimony in the amount of $1,250 per month for two years, then $250 per

month thereafter until the death or remarriage of Joyce, or the majority or emancipation of the younger daughter.

Joyce, in this appeal, urges that the court below abused its discretion in (1) failing to distribute sufficient income-producing property to her, and (2) in providing for a substantial reduction in alimony after two years.

2.    Courts in Nevada are granted broad discretion by statute to determine equitable distribution of community property assets and to award alimony. NRS 125.150(1).[1] "Before the appellate court will interfere with the trial judge's disposition of the community property of the parties or an alimony award, it must appear on the entire record in the case that the discretion of the trial judge has been abused." Shane v. Shane, 84 Nev. 20, 22, 435 P.2d 753, 755 (1968). The decision of the trial judge should be upheld if a review of the record indicates that "the trial judge after considering all the evidence in the record made a fair, just and equitable award". *Id.*

A.    *Distribution of Community Property.*

Joyce asserts various assignments of error, predicated primarily on the trial judge's failure to recognize that she would not realize yearly income from the major asset distributed to her: shares representing 40.13 percent ownership of Steel, Inc., a close corporation of which her husband was president and had been controlling stockholder.[2] The trial court explained that its decision to divide the shares of Steel, Inc., rather than have Stanley pay Joyce half their total value, was based upon "the lack of cash assets of the parties". The office building was awarded Stanley because it housed his business operation, and he was "in a better position to pay off the encumbrances" of some $82,000 on the building.

Appellant has set forth her estimate of the value of each of the community property assets as distributed. When the

---

[1] NRS 125.150(1): "In granting a divorce, the court may award such alimony to the wife, or to the husband if he is disabled or unable to provide for himself, in a specified principal sum or as specified periodic payments, and shall make such disposition of the community property of the parties, as appears just and equitable, having regard to the respective merits of the parties and to the condition in whieh they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens, if any, imposed upon it, for the benefit of the children."

[2] Joyce also argues error in the trial court's distribution of ownership of stock in two other corporations to Stanley, rather than Steel, Inc. Assuming that the court's finding is in error, it was in no way prejudicial to Joyce as her husband has tendered to Joyce the amounts which the trial court ordered paid her for the stock.

assumption of community property debts of $134,846, as ordered by the court, is included, and the amounts totalled, it appears that Joyce received assets valued at $356,059, while Stanley received assets, over and above the community debt, of $350,443.

The court "was not compelled to make an exact equal distribution to the parties of either the community property itself or the value thereof". Fox v. Fox, 81 Nev. 186, 196, 401 P.2d 53, 58 (1965).

The record shows that the trial court entered its order for distribution of the community property assets after consideration of voluminous evidence, both documentary and oral, and upon a practical consideration of the business realities involved. Its determination in this regard may not be disturbed on appeal.

B. *Award of Alimony.*

Joyce suggests that the court abused its discretion in awarding her alimony of $1,250 per month for two years, with a reduction to $250 per month thereafter. We agree.

The trial court explained its alimony award as follows:

> "Joyce has not worked during the course of her marriage and has no skill or trade to rely upon. The Court therefore should provide a period for her to learn a trade. The Court after examining the income tax returns (Exhibits 3, 4, 5 and 6) believes that alimony in the amount of $1250 per month for a period of two years would be a reasonable sum and time for Joyce to learn a trade or skill."

It is clear that the two year award was in the nature of "rehabilitative alimony", awarded wives for the purpose of facilitating their entry into the labor market. Some states have explicitly or implicitly provided for such awards. *See* Reback v. Reback, 296 So.2d 541, 543 (Fla.App. 1974); In re Marriage of Lopez, 113 Cal.Rptr. 58, 72 (Cal.App. 1974). The broad discretion afforded by NRS 125.150(1), *supra,* authorizes such an award in an appropriate case.

While the trial courts have wide discretion in the determination of alimony, nevertheless, there are limits to their discretion. The guidelines have been set forth as follows:

> "Much depends upon the particular facts of the individual case. Among the matters to be considered are: the financial condition of the parties; the nature and value of their

respective property; the contribution of each to any property held by them as tenants by the entirety; the duration of the marriage; the husband's income, his earning capacity, his age, health and ability to labor; and the wife's age, health, station and ability to earn a living." (Citation omitted.) Buchanan v. Buchanan, 90 Nev. 209, 215, 523 P.2d 1, 5 (1974).

In *Buchanan,* the wife was granted a payment of $300 per month, for three years as part of a property settlement. This court found the award showed "reasonable effort on the part of the trial court to allow appellant to adjust to the situation". 90 Nev. at 214, 523 P.2d at 4. The record revealed that the marriage had lasted only three years; that the wife was 31 years old, and capable of earning $20 per day as a model, at the time of the award; and that the husband's gross annual income during marriage had averaged $13,500.

In the instant case, however, there was a marriage of long duration (20 years), during which Joyce had cared for the house and the children. These responsibilities will continue for a number of years. Joyce was not found to be capable of earning a living at the time of the award. Respondents frankly conceded that the property allocated Joyce will generate little income. Nor are the stocks in Steel, Inc., a close corporation likely to be readily marketable. The parties differ considerably in their estimates of the gross income of Joyce's husband, but Stanley did concede a personal income before taxes of $83,000 in 1975. The trial court made no finding on the issue but did conclude, on the basis of its examination of income tax returns, that Joyce was initially entitled to $1,250 per month alimony.

Recently appellate courts in other jurisdictions have begun to question the wisdom of awarding "rehabilitative alimony" in cases involving marriages of long duration, particularly where there are minor children in the care and custody of the wife, and there is no showing that the wife will be able to acquire an earning capacity commensurate with her former standard of living.

In Kay v. Kay, 339 N.E.2d 143 (N.Y. 1975), the New York Court of Appeals upheld an Appellate Division determination that the trial court award of alimony had been inadequate. After recognizing the legitimate and healthy trend toward consideration of the wife's ability to become self-supporting in the determination of alimony (citing, among other cases, Freeman v. Freeman, 79 Nev. 33, 378 P.2d 264 (1963)), the court pointed out:

". . . in our zeal to correct what may have been inequitably

burdensome alimony arrangements and to recognize the selfhood of women as functioning, independent persons, we would do injustice to the men and women we seek to treat more equally if we ignored the facts of life. A woman who, for historical and personal reasons, and especially with the long concurrence of her husband, chooses to make her contribution to a marriage by remaining at home to raise the children of the union and who finds herself, after 23 years, alone with still-growing children to rear, might be victimized rather than liberated by being required to enter the working world." 339 N.E.2d at 147.

Although the wife in *Kay,* unlike Joyce, was college educated and had worked prior to marriage, she had not participated in the job market for many years. The court noted that if she preferred to work outside the home, and if her salary measurably exceeded work-related expenses such as child-care, her husband could apply for a modification of the award. However, the court continued, "where [a husband] has acquiesced in and benefited from her role as wife and mother for 23 years, he may not now, for his own economic reasons, force her into a different role without demonstrating that it has economic viability and that the children will not suffer any detriment from it". 339 N.E.2d at 147.[3]

Similarly, the California appellate courts have begun to question awards based on the assumption that wives who have not worked during marriages of long duration will develop the capacity to earn enough to meet expenses engendered by their life-style during marriage. In re Marriage of Lopez, *supra,* 113 Cal.Rptr. 58, held an award for $200 per month for 24 months unreasonable under the circumstances. The court noted that under California law, as in Nevada, trial courts have broad discretion to determine alimony, and that appellate courts are

---

[3]As counsel for Joyce correctly pointed out in oral argument, NRS 125.150(6) provides for automatic retention of jurisdiction by the trial court for purpose of modification of the alimony award. Such modification is only to be granted, however, upon a showing by the applicant that a change is warranted by "changed circumstances". The trial court's ruling, on the other hand, *presumes* that within two years circumstances will have changed so as to justify a $1,000 per month reduction in alimony. There was nothing in the evidence before the trial court which would support such an inference or justify a modification of the procedure, and the burden of proof, contained in the statute. *See* NRS 125.150(6), in pertinent part:

If a decree of divorce . . . provides for specified periodic payments of alimony, such decree or agreement is not subject to modification by the court as to accrued payments. Payments pursuant to a decree entered on or after July 1, 1975, which have not accrued at the time a motion for modification is filed may be modified upon a showing of changed circumstances, whether or not the court has expressly retained jurisdiction for such modification.

required to exercise judicial restraint. It observed that the wife was 39, and had not worked during 14 years of marriage. She had obtained custody of .her 15 year old daughter, and was granted $250 per month child support. She had submitted evidence of expenses of $1,000 per month at the time of separation. Although the husband pointed out that with income which could be obtained from the property awarded her, the wife would receive $890 per month, the court found this inadequate in light of the husband's ability to pay and the duration of the marriage.

The Supreme Court of California, In re Marriage of Morrison, 573 P.2d 41 (1978), speaking through Chief Justice Bird, had this to say on the subject at page 51:

> "Limiting the duration of support so that both parties can develop their own lives, free from obligations to each other, is a commendable goal. However, if courts were to award support with a set termination date simply for this reason and without any evidence as to the ability of the supported spouse to support himself or herself, great injustices could result. Although increasing numbers of married women today are employed, many others have devoted their time, with their spouse's approval, to maintaining the home and raising the children, leaving them no time for employment outside the home. This willingness of the wife to remain at home limits her ability to develop a career of her own. If the marriage is later dissolved, the wife may be unable, despite her greatest efforts, to enter the job market."[4]

The trial court in this case made no reference to any evidence, and made no factual findings, which would justify the conclusion that Joyce would be able to develop the capacity to earn $1,000 per month within two years. Respondents have pointed to no such evidence in the voluminous record. Yet that is the discrepancy between what Joyce will receive in support from her husband for the first two years, and thereafter.

We, therefore, conclude that the trial court, in its limitation of the duration of the initial alimony award to two years, failed to give adequate consideration, as required by *Buchanan,* to (1) the financial condition of the parties, (2) the non-income producing nature of the bulk of the property awarded the wife, (3)

---

[4]Florida appellate courts have also disapproved rehabilitative alimony, specifically authorized by Florida statute, in similar situations. Lash v. Lash, 307 So.2d 241 (Fla.App. 1975) (wife, in mid-forties, would be forced to enter job market after many years of marriage); Reback v. Reback, *supra,* 296 So.2d 541 (no evidence that wife, age 56, would develop capacity for self-support within 5 years allowed for alimony).

the 20 year duration of the marriage, (4) the husband's age, health, and long-term earning potential, and (5) the wife's limited ability to earn a living commensurate with her needs, particularly in light of her lack of job experience and her continued responsibility for the care of the two young children of the marriage.

The order of the trial court with respect to the distribution of the community property assets is affirmed. The order regarding alimony is reversed and remanded to the district court for reconsideration in accordance with the views expressed herein.