GAIL McNABNEY, Appellant and Cross-Respondent, v. LAURENCE McNABNEY, Respondent and Cross-Appellant.

No. 17755

November 27, 1989 782 P.2d 1291

*John Ohlson* and *Frederick H. Leeds,* Reno, for Appellant and Cross-Respondent.

*Pinkerton and Polaha,* Reno, for Respondent and Cross-Appellant.

## OPINION

By the Court, SPRINGER, J.:

The outcome of this appeal rests on the meaning of the words "just and equitable" as used in NRS 125.150(1). This statute relates to court distribution of community property between spouses in divorce cases.

> In granting a divorce, the court . . . shall make such disposition of . . . the community property of the parties . . . as appears *just and equitable*, having regard to the respective merits of the parties and to the condition in which they will be left by the divorce, and to the party through whom the property was acquired, and the burdens, if any, imposed upon it, for the benefit of the children.

NRS 125.150(1) (our emphasis).

The controversy here centers on the trial court's unequal but "just and equitable" division of one item of the parties' community property, a contingent legal fee received by the husband during the brief marriage of the parties.

The fee in question is to be received in the form of an annuity, payable in gradually increasing installments (presently $3,700.00 per month) until the year 2004. The fee is community property.[1]

The trial court divided the other community property in an equal manner but determined that it would be just and equitable to award eighty percent of the legal fee to the husband. The trial court's determination was based on these facts:

> 1. The marriage was of short duration. Although the divorce was not granted until after three years of marriage, the couple parted after only two years of marriage.

---

[1] The husband claims that the parties agreed orally that the annuity income was to be the husband's property and not community property. An oral agreement of this kind can be enforced under certain circumstances, but the presumption of community property can be overcome only by clear and certain proof. *See* Schreiber v. Schreiber, 99 Nev. 453, 663 P.2d 1189 (1983); Burdick v. Pope, 90 Nev. 28, 518 P.2d 146 (1974). Laurence's contentions were disputed by Gail, and the issue was decided in Gail's favor. Where a divorce court, sitting without a jury, makes this kind of decision, based on conflicting evidence, the decree will not be disturbed on appeal unless the holding was clearly erroneous. The conclusion that the income in question was part of the community is based on substantial evidence, and we conclude that no error has been committed by the trial court in holding that the annuity income is community property. Fletcher v. Fletcher, 89 Nev. 540, 516 P.2d 103 (1973). Laurence's cross-appeal will therefore be dismissed.

2. The wife entered into the marriage, according to trial court findings, with "considerable separate estate" which included "income from rentals of her several separate properties and an investment account in excess of $100,000.00."

3. The wife "had been a well-paid federal government employee," was self supporting and neither "expected or depended upon" the husband for "economic or financial support before or during the marriage."

4. The trial court expressly found that after the divorce the wife will not require any financial assistance and will be able on her own to "maintain the same standard of living and lifestyle" that she had had.

5. With regard to the husband's income, the trial court found that "the monthly payments [of the annuity] constitute a substantial portion of [the husband's] law practice income."

The trial court could certainly have viewed this fee to have been a rare or once-in-a-lifetime emolument, which comprised, as expressly found by the court, a "substantial portion" of the husband's income. Of course, had there been children, had the wife been sick or disabled, or had the wife not have been financially independent, the equities would have been much different and not have justified this kind of distribution.

Persons of fair mind and disposition may reasonably conclude that the trial court's not wanting to deprive the husband of a substantial portion of his income and the court's wanting to give the husband a larger proportion of his earned fee were motivated by a sense of fairness and not by any thought of favoring one party or disfavoring the other. Most certainly the trial court's exercise of discretion in this regard was not "clearly erroneous" so as to require reversal. *See* Ellett v. Ellett, 94 Nev. 34, 573 P.2d 1179 (1978); Johnson v. Steele, Inc., 94 Nev. 483, 581 P.2d 860 (1978).

The real question presented by this appeal is not whether the trial court's disposition was in fact "just and equitable," but, rather, whether the court had the power to divide this asset in a manner other than equally. If this were not the case, this appeal could be easily disposed of in summary fashion for it is fairly easy to conclude that the trial court's division of the husband's fee was not clearly erroneous. The wife centers her appeal not so much on the division itself but rather on the proposition that Nevada case law "mandates" that the division of all community property, and therefore the property in question, must be "essentially equal."

How the wife can maintain that the Nevada statute which requires a division of community property that is "just and equitable," really means a division that is "essentially equal" would be incomprehensible were it not for some possibly misleading language in Nevada case law. We will undertake to clarify any misunderstanding relative to this point.

That there has been a misunderstanding of some kind cannot be doubted. The trial judge himself questioned counsel as to whether he in fact had the power to "divide it unequally" and wondered if he was permitted in this case to make "an exception to the fifty-fifty rule." There is, of course, in Nevada, no "fifty-fifty rule" when it comes to the disposition of community property under NRS 125.150(1). The Nevada divorce statute directs only that a division of community property be *just and equitable* and that, in making such a division, the court must give due regard to the respective merits of the parties, to the condition in which they are left by the divorce and to who acquired the property. Therefore, it was quite proper for the trial court to decide that it did not have to make an equal, "fifty-fifty" division of this item of property, and it was not unreasonable for the trial court to have concluded that the husband merited or deserved to receive a larger proportion of his earned fee so that he would, like his wife, leave the marriage with an adequate income. Both parties were left by the trial court's action in sound economic circumstances, and the trial judge simply and properly found in accordance with the statute that the unequal division of this asset was just and equitable.

There is much precedent for the kind of equitable disposition that took place in this case. In Herzog v. Herzog, 69 Nev. 286, 249 P.2d 533 (1952), for example, this court stated with approval that "the trial court exercised its discretion by, in effect, awarding all of the community personal property to the husband. . . ." 69 Nev. at 290, 249 P.2d at 535. How, then, can the wife even think to urge upon this court, as she does, that "discretion has been consistently and clearly denied by the Supreme Court?" The answer may be, as observed by the trial court in this case, that "[t]he language of the statute has been ignored by the Supreme Court."

Certainly the bar has been beset by the uncertainties bearing on the question of equitable versus equal community property division. One Nevada Bar Journal article noted that "[i]n Nevada, the practitioner is unable to advise his or her client, with any certainty, as to what the law provides and how the trial court would review distribution under certain circumstances. The *confusion* lies in the contradiction between the distribution statute

and the decisions of the Nevada Supreme Court."[2] (Our emphasis.) The author pinpoints the problem when he says

> By statute, Nevada is an equitable division community property state. This seemingly clear pronouncement of legislative intent is now brought into question by conflicting decisions of the appellate court and its apparent judicially created presumption that equal is equitable in most cases.

It is certainly true, as stated by Mr. Logar, that Nevada is by statute an "equitable distribution" jurisdiction, rather than an "equal distribution" jurisdiction, when it comes to distribution of community property.[3] There is not, however, as suggested in the bar journal article, a real or "apparent judicially created presumption that equal is equitable in most cases." This court would not have taken it upon itself to make such a radical change in the law as to institute judicially a shift in the burden of proof in divorce cases in the manner done by statute in Idaho. (*See* footnote 3). The statute as it now reads requires the divorce court in making a division equitable to consider the merits of the parties, the condition in which they will be left by the divorce, the person who acquired the property and the needs of the children. NRS 125.150(1).[4] An infinity of facts and circumstances bear upon these statutory considerations, and each case must be decided individually and on its own merits, although courts may use equal division of community property as a "starting point."[5] There is nothing in the statute that states or suggests

---

[2]Logar, *Equitable or Equal: Nevada's Dilemma,* 52(2) Inter Alia (Journal of the State Bar of Nevada), Forum section, F7 (March-April 1987).

[3]Some states (California, Louisiana, New Mexico) have statutes that mandate non-discretionary, equal division of community property at divorce. Other states (Arizona, Texas, Washington) require divorce courts to apply general principles of equity and justice to the process. We are an "equitable jurisdiction," and only the legislature can make us otherwise. Idaho is somewhat of a hybrid in this regard. Idaho is an equitable jurisdiction, but by statute Idaho has created a statutory presumption by which the burden of proof has been shifted to the party seeking an equitable yet unequal share of the community property. Idaho Code, section 32-712.1(1) reads: "Unless there are compelling reasons otherwise, there shall be substantially equal division in value, considering debts between the spouses."

[4]The statute requires consideration of "the respective merits of the parties." This phrase has not been defined by the legislature or this court. No claim has ever been made that one or the other party is more deserving or more meritorious by reason of the fault of the other. In considering this factor we must assume that the trial court considered only the respective *economic* merits of the parties.

[5]Professor Mary Ann Glendon of Harvard Law School has called equitable

that property must be divided evenly or that one party or the other should have an added burden of proof in establishing what is just and equitable.

As there is in Nevada no judicially created presumption favoring equal distribution of community property, neither is there a

---

distribution "discretionary distribution" because of the broad discretionary powers of judges to mete out "individualized justice" in divorce cases. Although this breadth of discretion can bring about abuses and injustices "[t]he vast majority of states allow the divorce court much flexibility in fashioning an appropriate division or distribution of property." Golden, *Equal Distribution of Property,* Family Law Series, Shepard's/McGraw Hill, p. 240 (1984).

> Courts are virtually unanimous in holding that an equitable, just, or reasonable distribution does not necessarily mean an equal one. While an equal division may well prove to be an equitable one, the court is not compelled to make a 50-50 split. Moreover, there is no mathematical formula for deciding what is just and equitable. Each case must be decided on its own facts and circumstances, thus rendering precedents of little value in evaluating what kind of award is proper. For this reason it is "ill-advised and impossible for any court to set down a flat rule concerning property division upon divorce.

*Golden,* at 241 (citations omitted).

Because of the very nature of community property, divorce court judges are likely in their deliberative processes to use equal division as a "starting point" for equitable distribution. (*See Golden, op.cit.,* p. 806). This is different from there being a legal presumption, where, as a matter of law, the spouse contesting equal division has the burden of overcoming a presumption. Using equal distribution of community property as a starting point "creates a particular structure for the judge's deliberative process but has no formal burden of proof attached to it." *Golden,* at 243. The "starting point" approach was criticized by the New Jersey Supreme Court in Rothman v. Rothman, 320 A.2d 496, 503 n.6 (N.J. 1974), because it seemed to be importing community property concepts into a common law state. Such objections obviously do not apply here.

Using equal division of community property as a starting point is not the same as there being a fifty-fifty "rule in most cases." *Weeks,* above. Even "starting" at equal division has its problems. "One problem is that Family Court Judges tend to use a 50/50 rule of thumb in the division of marital property, which can leave the wife with insufficient compensation for her contribution to the marriage and for her diminished earning capacity due to conditions of the marriage. In some cases women ought to be awarded more than fifty percent for a truly equitable distribution, and thus a 50/50 split is not always a fair apportionment." *Final Report of the Rhode Island Committee on Women in the Courts,* p. 40 (June 1987).

Finally, laying too much stress on equal division may tend to favor the stronger party in divorce litigation. "To the party with fewer financial resources, the promise of equitable distribution is significant. In short, equitable distribution theoretically enhances the weaker party's negotiating position, encouraging a more equitable result to the divorce process." N. Perlberger, *Pennsylvania's Equitable Distribution: Progress or Confusion?,* 60 Temple L. Rev. 293 (1987).

judicial "mandate" that community property must be divided in an "essentially equal manner." The trial judge in this case made a comment about the "contradiction between the distribution statute and the decisions of the Supreme Court." Any such contradiction real or apparent is now eliminated.

A careful reading and review of our cases reveals that the confusion and contradiction between statute and decision probably find their origin in the case of Weeks v. Weeks, 75 Nev. 411, 415, 345 P.2d 228, 230 (1959). The unfortunate language in *Weeks* that has led to this apparent "contradiction" is this: *"Equal distribution of the community property appears to be the rule in most cases."* (Our emphasis.) This sentence says that when courts have divided community property, it *appears* that they usually, *i.e.,* in more than half the cases, distribute equally.[6] The stated statistical estimate is probably true. After all, community property is, by definition, property owned in common by a husband and wife, with each having an undivided one-half interest. As a rule, courts, as was done with most of the community property in this particular case, have probably used equal division of community property as a starting point. That equal division of community property happens to be done as a rule certainly *does not mean* that there is any kind of imperative "fifty-fifty" legal rule of community property division which must be applied except when the one party who is seeking justice and equity is able to demonstrate the need for an unequal division. A *legal rule* as distinguished from a statement of statistical regularity is a "precept attaching a definite legal consequence to a definite, detailed state of facts." R. Pound, "Hierarchy of Sources and Forms in Different Systems of Law," 7 Tul. L. Rev. 475 (1933), *reprinted in* R. Aldisert, *The Judicial Process,* p. 64 (1976). An example of a *legal rule* would be: "Divorce courts must divide community property equally between the parties." *Weeks* does not state such a legal rule; and if it had, it would have been, as already pointed out, in contravention of NRS 125.150(1). To put such a burden on one who is seeking what is just and equitable according to the terms of NRS 125.150(1) is to make a major change in the substantive law, a change that the court in *Weeks* should not, could not and did not effectuate.

---

[6]Quite obviously, the phrase, "appears to be the rule," means "appears to be the custom or practice" or "as a rule this appears to be what is happening." Certainly it is not a statement of a legal rule, precept or principle. No appellate court intending to state a legal rule would ever say, "Henceforth, the following *appears* to be the legal rule which should be followed in divorce cases." Any legal *rule* stating that equitable means equal would be contrary to NRS 125.150(1).

The "appears-to-be-the-rule-in-most-cases" language of *Weeks* was quoted with approval in Stojanovich v. Stojanovich, 86 Nev. 789, 476 P.2d 950 (1970). The *Stojanovich* court went on to create a judicial addendum to the statute by requiring that when the trial court makes an equitable but unequal division of community property, it must accompany the division with a "clearly expressed reason in what manner, for what purpose, and for whose benefit the division is made." It is true that such an explicit statement of reasons was not made in the case now before us; but no demand was made for such a statement, and no objections were made to the form of the findings and judgment. Further, ample reasons for the court's equitable division of this item of community property appear in the record, and the wife was in no way prejudiced by any absence of the *Stojanovich* statement-of-reasons requirement. Neither *Weeks* nor *Stojanovich* provides any predicate for reversal in this case.

We conclude that Nevada law most certainly does not, as contended by the wife, *mandate* "essentially equal" division of community property. A rigid "fifty-fifty rule" may obtain in "equal distribution" jurisdictions, but does not apply in Nevada, where the division must be "just and equitable." A fifty-fifty rule as a rule of law is inherently inconsistent with our statute. Any claimed "mandate" for an essentially equal division of community property is far too mechanical to allow for the broad discretion necessary in order to permit courts to make just and equitable divisions of property in divorce cases.

There was no need for the trial judge to pause, as he did, before deciding upon an unequal division of this community asset. Equal does not necessarily mean equitable. Countless examples can be brought to mind in which equal division is not equitable. The preeminent example is that of the wife and mother in a long-term marriage who has given up career opportunities to devote herself to her family. Very frequently justice and equity will require a divorce court to adjust community property in an unequal manner in these cases.

NRS 125.150(1) requires the divorce court to consider "the party through whom the property was acquired." This does not, of course, mean that in a community property state the party who acquires an item of community property is entitled by virtue of the acquisition to any greater or lesser share of the community property. "As a rule" the husband is more frequently the party who does the acquiring of community property. This obviously, by itself, entitles him to nothing. It is legitimate, however, as

indicated by the wording of the statute, to consider who acquired the property when equitable considerations are being weighed. In a case like this one, where each party is economically self-sufficient, it is permissible to consider, as a factor in deciding how property is to be equitably distributed, how the property was acquired. If the wife had acquired a similar item of community property under comparable conditions, she, certainly, could be expected to seek an equitable but more than equal share.[7] If the court looked in this case to the manner in which the property was acquired and to the fact that while unequal distribution would have little or no effect on the wife's lifestyle, a different allocation would result in a substantial diminution in the husband's income and standard of living, then the unequal division decided upon would clearly be justified.

That the unequal division of the fee acquired by the husband was "clearly erroneous," which is to say *clearly* unjust and inequitable, is a conclusion that an appellate court should not reach in a case like this. That the mere failure to state reasons in accordance with the dictum in *Stojanovich* should be used as an excuse for reversing the judgment of the trial court is to ignore the basic fairness of the trial court's careful treatment of this case, the failure of the wife to preserve any error of this nature and the lack of any prejudice to the wife related to any failure on the part of the trial court to give a statement of reasons. There is no error on this record. The cross-appeal is dismissed; and the judgment of the trial court is affirmed.

MOWBRAY, J., and GUNDERSON, Sr. J.,[8] concur.

YOUNG, C. J., with whom STEFFEN, J., agrees, dissenting:

The district court classified the annuity as community property subject to disposition. It further found that awarding Laurence eighty percent and Gail twenty percent of the annuity was "just

---

[7]An example comes to mind: If, say, during a short-term marriage the wife were to reap the financial rewards from a novel which had been many years in the writing and each party were economically self-sufficient at the time of the divorce, the court, in making a just and equitable distribution of the community property, could appropriately consider an award to the wife of a larger share of this asset.

[8]Oral argument in this case was held on November 12, 1987. SENIOR JUSTICE E. M. GUNDERSON participated in the oral argument as a justice of the Nevada Supreme Court. THE HONORABLE THOMAS L. STEFFEN, Justice, appointed THE HONORABLE E. M. GUNDERSON, Senior Justice, to participate in the determination of this matter.

THE HONORABLE ROBERT E. ROSE, Justice, did not participate in the disposition of this case.

and equitable.'' However, the district court gave no specific reasons for this distribution. Instead, the court simply stated that it would not be just and equitable to divide the annuity equally.

At the time of the divorce trial, the annuity had a present value of approximately $713,000. By the trial court's distribution, Laurence would receive $570,000 and Gail $142,600 of the annuity's value as of March 1986. We agree with Gail that this division constituted an abuse of the trial court's discretion given the court's failure to set forth its reasons for the selected distribution scheme.

Nevada law provides for a disposition of community property ''as appears just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by the divorce, and to the party through whom the property was acquired. . . .'' NRS 125.150(1)(b). Our case law for nearly 30 years has reflected that ''[e]qual distribution of the community property appears to be the rule in most cases.'' Weeks v. Weeks, 75 Nev. 411, 415, 345 P.2d 228, 230 (1959). We have consistently reaffirmed the general doctrine expressed in *Weeks*. Fox v. Fox, 81 Nev. 186, 197, 401 P.2d 53, 58 (1965); Stojanovich v. Stojanovich, 86 Nev. 789, 793, 476 P.2d 950, 952-953 (1970); Jolley v. Jolley, 92 Nev. 298, 299, 549 P.2d 1407 (1976); Schick v. Schick, 97 Nev. 352, 353, 630 P.2d 1220, 1221 (1981). We recently overturned a district court for ignoring the general principle announced by this court—equal division of community property as the rule—when neither the court nor the record provided a justification for disregarding appellant's community property interest in respondent's home. Sly v. Sly, 100 Nev. 236, 240, 679 P.2d 1260, 1262 (1984).

The majority opinion concludes that the general rule is ''an innocuous statistical observation.'' We disagree. Such a deprecatory label seems hardly appropriate when, in every decision in the last three decades we have held that under normal circumstances, equitable distribution requires an equal division of community assets. My brethren, who now undermine the *Weeks* rule, participated in many of these decisions. Heretofore, there has been no criticism of the holding in *Weeks* or its progeny. Moreover, although the majority opinion censures the initial presumption of an equal division, it offers no suggestions as to what guidelines the district courts should use when distributing community assets. There must be some starting point in the calculus of the trial judge. If a fifty-fifty figure is unsatisfactory to the majority, would a sixty-forty figure be preferable—or, should the ratio be determined on an ad hoc basis, after which the court could preclude rational review by merely uttering the mystical incantation that the division is ''just and equitable.''

The community property system is based upon the premise that spouses contribute equally to marriage and thus deserve to share equally in the resulting gains of marriage. *Marital Property Reform,* 23 B.C.L. Rev. 761, 771 (1982). As the majority opinion correctly states, "[c]ommunity property is, by definition, property owned in common by a husband and wife, each having an undivided one-half interest."[1] Accordingly, it is difficult to see how the starting place to determine a just and equitable distribution could be anything other than a fifty-fifty split. Cherry v. Cherry, 421 N.E.2d 1293, 1298-1299 (Ohio 1981);[2] *see* Hatch v. Hatch, 547 P.2d 1044, 1047 (Ariz. 1976) (holding that in the absence of sound reason, each spouse must receive substantial equivalents in the division of community property).

Furthermore, after acknowledging that it is the husband who more frequently does the acquiring of community property, the majority states that it is legitimate to consider who acquired the property when equitable considerations are being weighed. While we may agree that it is appropriate to consider who acquired the property, it is precisely because wives less frequently do the acquiring that we believe anything other than an equal division starting point may well work an inequity for women.

In *Stojanovich,* this court noted that although the district court is vested with broad discretion in the division of community property, the trial court must support an unequal disposition by "a clearly expressed reason in what manner, for what purpose and for whose benefit that division is made." 86 Nev. at 793, 476 P.2d at 953. Since *Stojanovich,* we have consistently affirmed the requirement that the district court provide its reasons for deviating from a presumptively just and equitable division: an equal disposition of community property. Sly v. Sly, 100 Nev. 236, 240, 679 P.2d 1260, 1262 (1984); Schick v. Schick, 97 Nev. 352, 354, 630 P.2d 1220, 1221 (1981).

The majority criticizes the *Stojanovich* decision, stating that the court reached this conclusion "without citation of authority, statement of reasons or other discussion." However, logic dictates that if the appellate process is to provide a meaningful review of the district court's decision, the trial court must state its rationale for any discrepancy in the property division. When the trial court fails to state its reasons for the selected distribution

---

[1]NRS 123.225(1) defines the respective interests of the husband and wife in community property as "present, existing and *equal* interests." (Emphasis added.)

[2]Although Ohio is a non-community property state, it utilizes equitable distribution, a concept similar to fair and equitable distribution under NRS 125.150.

scheme, it prevents effective review. *See* Commercial Cabinet Co. v. Wallin, 103 Nev. 238, 737 P.2d 515 (1987) (remanding case when the district court's failure to make specific findings prevented effective review of the propriety of the award). *Stojanovich* is consistent with Nevada law requiring that a district court make specific findings of fact sufficient to indicate the basis of its ultimate conclusion. NRCP 52(a); *e.g.*, Wilford v. Wilford, 101 Nev. 212, 215, 699 P.2d 105, 107 (1985). Thus, we conclude that the district court cannot merely rely on the magic words that "a just and equitable division" requires the chosen disposition. Instead of this amorphous phrase, the court must provide appropriate reasons for a disproportionate distribution of community property.

According to the majority opinion, the record supports the trial court's conclusion that an equal division of the annuity income was not equitable. It lists the following three factors to justify the trial court's manifestly unequal eighty-twenty division: (1) the parties were married a relatively short period of time, approximately three years; (2) Gail can maintain the same standard of living and lifestyle that she had before and during marriage despite the unequal distribution of the annuity; and (3) the monthly annuity payments constitute a substantial portion of Laurence's law practice income.

We conclude that the reasons stated by the majority opinion for the eighty-twenty division do not justify the trial court's disposition of the annuity income. The factors listed by the majority are not persuasive in supporting a deviation from the general rule. Even though the parties were married only three years, Laurence clearly earned the annuity during his marriage to Gail. A relatively brief marriage does not alter the annuity's community property status, so it should not affect the distribution of the community assets.

Likewise, the second and third factors are of questionable relevance in dividing the annuity. The record indicates that both Laurence and Gail came into their marriage with considerable separate property. The record fails to show that either party requires the income from the annuity to maintain the standard of living enjoyed before and during marriage. Consequently, the last two factors do not justify the district court's deviation from an equal disposition of the annuity income. If the gossamer reasons expressed by the trial court are deemed adequate to validate giving Laurence $570,000 and Gail $142,600 of what was clearly community property, we will establish precedent which may engender prolonged litigation, the principal beneficiaries of which will most likely be the lawyers, not the litigants. We will

turn back the clock to the days prior to no-fault divorce when inordinate amounts of time and money were consumed in trying to show which spouse was guilty of greater fault.