In re Hidemi FIELD, Debtor.

No. BK–S–08–23345–BAM.

United States Bankruptcy Court,
D. Nevada.

Oct. 8, 2009.

David Krieger, George Haines, Haines & Krieger, L.L.C., Elizabeth Ruth De-flyer, Las Vegas, NV, for Debtor.

## MEMORANDUM

BRUCE A. MARKELL, Bankruptcy Judge.

Hidemi Field ("Hidemi") filed a chapter 13 bankruptcy petition on November 11, 2008 (dkt. # 1). On December 30, 2008, the Internal Revenue Service ("IRS") filed a proof of claim in Hidemi's case in the amount of $265,358.86 ("Claim 7–1" or "the proof of claim").[1] The proof of claim related to tax delinquencies incurred in 1999, 2000, 2005, 2006, and 2007. Some of those tax debts, however, were incurred not by Hidemi, but by her husband, Charles Harvey Field ("Charles"). Charles has not filed bankruptcy.

On January 28, 2009, Hidemi filed an objection to the proof of claim (dkt. # 31).[2] Hidemi objected to those portions of the proof of claim that related to tax debts Charles incurred before Hidemi and Charles were married in 2004—i.e., those debts incurred in the years 1999 and 2000. *See* Certified Abstract of Marriage (dkt. # 31–1) (showing that Hidemi and Charles were married in August of 2004). Hidemi has not disputed that Charles owes the premarital tax debts; she only objects to the IRS' attempt to recover on those debts through filing a claim in her chapter 13 bankruptcy case.[3] Over 90 percent of the amounts listed in the proof of claim— $247,583—relate to the premarital tax debts.

The IRS responded to Hidemi's objections, defending the propriety of its proof of claim (dkt. # 45). It maintains that it included the premarital tax debts—which it acknowledges are attributable solely to Charles—properly on its proof of claim because those premarital tax debts constitute "community claims" of Hidemi under the Bankruptcy Code.

### DISCUSSION

■ An entity is a "creditor" in a bankruptcy case when it holds a pre-petition "claim"—broadly, a "right to payment"— for which the debtor is liable. 11 U.S.C. §§ 101(5), 101(10)(A). But an entity may also be a "creditor" because it holds a "community claim." 11 U.S.C. § 101(10)(C); 2 COLLIER ON BANKRUPTCY ¶ 101.10, at 101–77 (Alan N. Resnick & Henry J. Sommer eds., 15th rev. ed. 2009).

■ The Bankruptcy Code defines the phrase "community claim" in section 101(7), which provides that:

> The term "community claim" means [a] claim that arose before the commencement of the case concerning the debtor for which property of the kind specified in section 541(a)(2) of this title is liable, whether or not there is any such property at the time of the commencement of the case.

11 U.S.C. § 101(7). As explained by the Ninth Circuit Court of Appeals:

> [A] "community claim" is a debt owed by the debtor or the debtor's spouse, which

---

1. Claim 7–1 was amended as to amount on March 11, 2009, to $262,261.58. *See* Claim 7–2. This memorandum refers to Claim 7–1 because the debtor's objections were filed with reference to that claim. The resolution of the issues discussed herein applies equally to the amended claim because both claims include the debts that are owed by Charles to which Hidemi has objected.

2. Hidemi did not properly serve her objection on the IRS, but the IRS has waived the inade-

quate service of process, given the extension of time granted to the IRS to respond to this matter.

3. The IRS' brief explains that most of Charles' 1999 and 2000 tax debts relate to his failure to turn over amounts withheld from employee wages for income tax and FICA tax. Charles has not appeared in this proceeding, and there is no evidence that he disputed these tax debts in another forum.

under state law could have been satisfied from community property that would have passed to the debtor's bankruptcy estate, whether or not such property existed at the commencement of the case. Thus, three criteria must be met before an obligation has the status of a community claim: (1) it must be a debt owed by one of the spouses; (2) it must be satisfiable from community property under applicable state law; and (3) the community property from which the debt could be satisfied under state law must be included within the assets which would pass to the debtor's bankruptcy estate, whether or not such assets exist at the commencement of the case.

*Fed. Deposit Ins. Co. v. Soderling (In re Soderling),* 998 F.2d 730, 733 (9th Cir. 1993) (quoting Alan Pedlar, *Community Property and the Bankruptcy Reform Act of 1978,* 11 St. Mary's L.J. 349, 351–52 (1979)). An entity's proof of claim filed under 11 U.S.C. § 501(a) is proper to the extent that it represents either a claim under section 101(5) or a community claim under section 101(7), or both. *In re Pfalzgraf,* 236 B.R. 390, 391 (Bankr.E.D.Wis. 1999) ("Having a community claim entitles a creditor to file a proof of claim."); *see also* Collier, *supra,* at ¶¶ 501.01[1], [2].

Here, the IRS asserts that its proof of claim was proper with respect to Charles' premarital tax debts because those debts are community claims. Tracking the words of the statute, the IRS asserts that Charles' premarital tax debts were prepetition claims, they concerned Hidemi, and they are payable from property of the kind specified in 11 U.S.C. § 541(a)(2). The analysis in turn requires consideration of section 541(a)(2).

Section 541 creates an "estate" when a bankruptcy case is filed. The various subsections of section 541 govern the composition of that estate. Section 541(a)(2) brings a variety of community property into the bankruptcy estate by providing that the estate includes:

All interests of the debtor and the debtor's spouse in *community property* as of the commencement of the case that is—

(A) under the sole, equal, or joint management and control of the debtor; or

(B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

11 U.S.C. § 541(a)(2) (emphasis supplied); Collier on Bankruptcy, *supra,* at ¶ 541.13. The term "community property" is not defined by the Bankruptcy Code; to give meaning to that term, the court looks to the relevant state law, which in this case, is the law of the state of Nevada. Collier on Bankruptcy, *supra,* at ¶ 101.07[1] n. 2; *Butner v. United States,* 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Property interests are created and defined by state law"); *see also Soderling,* 998 F.2d at 733.

Nevada is a community property state, which means that Nevada law presumes that all property not acquired by gift, bequest, or devise belongs to the "community" created when two people marry.[4] *Waldman v. Maini,* 195 P.3d 850, 855 (Nev.2008). Thus, absent an exception, under the terms of Nevada's community property scheme, each spouse acquires an ultimate one-half residual ownership interest in all property ac-

---

4. This presumption may be overcome by a showing of clear and convincing evidence that such property is not community property.

*Norwest Financial,* 109 Nev. at 245, 849 P.2d at 326.

quired during the term of a marriage, regardless of whether the property is acquired by husband, wife, or both.[5] NEV.REV.STAT. § 123.220; *see Norwest Fin. v. Lawver,* 109 Nev. 242, 245–46, 849 P.2d 324, 326 (1993); *McNabney v. McNabney,* 105 Nev. 652, 782 P.2d 1291 (1989). Under NEV.REV.STAT. §§ 123.225 and 123.230, however, all aspects of such community property—that is, each spouses's interest—is under the joint control of both spouses. *Soper v. Crystal Palace Gambling Hall, Inc. (In re Crystal Palace Gambling Hall, Inc.),* 36 B.R. 947, 950 (9th Cir. BAP 1984).

 Given that Nevada law places all community property under the joint control of Charles and Hidemi, it follows from section 541(a)(2) that all interests of Charles and Hidemi in community property presumptively became property of Hidemi's bankruptcy estate upon the filing of her chapter 13 petition. HENRY J. SOMMER & MARGARET DEE MCGARITY, COLLIER FAMILY LAW AND THE BANKRUPTCY CODE ¶ 4.03[3][f] (2009) ("all community property [in Nevada], except for business assets managed by the nonfiling spouse, is included in the debtor spouse's bankruptcy estate under section 541(a)(2)(A)."). Therefore, returning to the definition of community claim, if any of this community property (which is now property of the estate) is liable for Charles' premarital tax debts, then those premarital tax debts constitute community claims under section 101(7) and the IRS has properly included those tax debts in its proof of claim in Hidemi's case. And under prevailing federal law, this court looks to Nevada state law to determine whether a particular property interest is liable for Charles' premarital tax debts. *Nobelman v. Am. Sav. Bank,* 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993) ("Congress has 'left the determination of property rights in the assets of a bankrupt's estate to state law,' since such '[p]roperty interests are created and defined by state law' ").

 Nevada law treats debts and other obligations incurred during the term of a marriage similarly to the way it treats property. That is, debts incurred before marriage remain the separate debts of each spouse—they do not automatically transmute into community debts upon marriage. *See Norwest Financial,* 109 Nev. at 246, 849 P.2d at 326. From this, it follows that Hidemi's interest in the couple's post-marriage community property is not liable for Charles' premarital tax debts. *See* NEV.REV.STAT. § 123.050 ("Neither the separate property of a spouse nor his share of the community property is liable for the debts of the other spouse contracted before the marriage."). However, Charles' interest in the couple's community property *is* liable for his premarital tax debts. *See* COLLIER ON BANKRUPTCY, *supra,* at ¶ 101.07[3][f], *supra* ("In Nevada, prenuptial creditors may reach the debtor spouse's separate property and that spouse's interest in the community property"). And the IRS may attach and foreclose one spouses' share of community property for that spouse's premarital debts. *Cf. United States v. Overman,* 424 F.2d 1142 (9th Cir.1970) *and Silverstein v. United States (In re Ackerman),* 424 F.2d 1148 (9th Cir.1970) (companion cases which allow attachment of federal tax liens related to one spouse's premarital tax deficiency to that spouses share of community

---

5. This community property regime does not affect property that was acquired before marriage—such property remains the "separate" property of the acquiring spouse. *See* NEV. REV.STAT. § 123.130; *see e.g., Campbell v.* *Campbell,* 101 Nev. 380, 382–83, 705 P.2d 154, 155–56 (1985) (finding that a certificate of deposit was the separate property of the husband because he acquired it before the marriage).

property in Washington and Arizona, states that have the same community property rules as Nevada); *see also* Rev. Rul. 2004–73, 2004–2 C.B. 80 (IRS position that it can attach one-half of a Nevada couple's community property in satisfaction of one spouse's separate premarital tax debts).

Therefore, since Charles' interest in the couple's community property is liable for his premarital tax debts and since that community property is part of Hidemi's bankruptcy estate, the IRS has a community claim, as that term is defined under Section 101(7), in Hidemi's bankruptcy case. *See Soderling*, 998 F.2d at 733–34. Thus, even though Hidemi is individually not liable for Charles' premarital tax liabilities, Charles' share of the couple's community property is liable for those tax liabilities. COLLIER ON BANKRUPTCY, *supra*, at ¶ 101.07[3][f] ("In Nevada, prenuptial creditors may reach the debtor spouse's separate property *and that spouse's interest in the community property.*") (emphasis supplied). Under Nevada law, this share is one-half of the total community property, and the IRS thus has a valid claim on one-half of the community property in the bankruptcy estate for Charles' unpaid taxes.[6] Therefore, it was proper for the IRS to include Charles' premarital tax liabilities on its proof of claim in Hidemi's case.

 This result is neither logically problematic nor "demonstrably at odds with the intentions of [the Code's] drafters." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989); COLLIER ON BANKRUPTCY, *supra*, at ¶ 101.07[1], at p. 101–55

("[A]n estate containing community property presents a unique situation under the Code in that its assets will be disbursed to both the creditors of the debtor and to entities who are not creditors of the debtor under state law, but who hold community claims under the Code."). The IRS gains no substantial advantage by being permitted to file a proof of claim in Hidemi's case that relates to Charles' premarital tax debts. If Hidemi completes all payments under a chapter 13 plan and complies with all other necessary requirements, she will receive a discharge under 11 U.S.C. § 1328(a). The entry of that discharge will significantly impair the ability of the IRS to collect on Charles' premarital tax debts, given the effect of a discharge on community claims and community property, as set forth in 11 U.S.C. § 524(a). That section provides:

> A discharge in a case under this title … (3) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not

---

6. An example illustrates the court's understanding of the law. Assume that Hidemi was the sole wage earner, and earned $10,000 per month. That $10,000 would be community property. Charles would have an undivided one-half interest in that sum, and thus outside of bankruptcy, the IRS could attach $5,000 of the $10,000, as it could attach Charles' interest in the community property.

discharge of the debt based on such community claim is waived.

11 U.S.C. § 524(a). Stated simply, "[r]egardless of whether the community claim was attributable to the actions of the debtor spouse, the nondebtor spouse, or both, the effect of § 524(a)(3) is that all community property acquired post-bankruptcy is protected by the discharge." *Rooz v. Kimmel (In re Kimmel)*, 378 B.R. 630, 635–36 (9th Cir. BAP 2007); *see also* COLLIER ON BANKRUPTCY, *supra*, at ¶ 524.02[3][a].

Thus, the payments that the IRS will receive under Hidemi's plan could be the only payments it will ever receive with respect to Charles' premarital tax debts. Of course, Charles could acquire some separate (i.e., non-community) property that the IRS could levy on in an attempt to collect the premarital tax debts, or Charles and Hidemi could get divorced, which would result in an end to Charles' acquisition of community property (with Hidemi). Charles could also opt to pay the IRS voluntarily. But absent those occurrences, the IRS' submission of its community claim is its sole recourse against Charles, now that Hidemi has filed bankruptcy.[7]

### CONCLUSION

The IRS properly included Charles' premarital tax debts on its proof of claim in Hidemi's bankruptcy case because Charles' premarital tax debts constitute a community claim under the Bankruptcy Code, and Charles' share of the community assets are available to satisfy that debt. However, that is all the community property that the IRS could reach for Charles' unpaid, premarital taxes.

7. This Memorandum does not consider the different treatment that the IRS might be subject to in any chapter 13 plan; given its restricted access to the pool of community assets, for example, an argument might be

The above represents this court's findings of fact and conclusions of law under FED. R. BANKR.P. 7052 (incorporating FED. R.CIV.P. 52). A separate order shall be entered in accordance with FED. R. BANKR.P. 9021 (incorporating FED.R.CIV.P. 58).

IT IS SO ORDERED.

made that the IRS could be classified separately and subject to different treatment consistent with its limited rights against community property.