LORETTA STEVENS HEIM, APPELLANT/CROSS-RESPONDENT, *v.* DWIGHT HEIM, RESPONDENT/CROSS-APPELLANT.

No. 18240

October 28, 1988                          763 P.2d 678

*Lynn R. Shoen,* Las Vegas, for Appellant/Cross-Respondent.

*Greenman, Goldberg & Raby,* and *Gabriel A. Martinez,* Las Vegas, for Respondent/Cross-Appellant.

---

## OPINION

By the Court, SPRINGER, J.:

This is an appeal by a divorced wife who claims that the trial court abused its discretion in awarding her only $500.00 per month alimony under the following circumstances:

(a) a marriage of thirty-five years;

(b) a marriage during which, by agreement of the parties, the wife did not pursue her own employment or career so that she could remain at home as a homemaker and raise the parties' six children;

(c) a marriage during which the husband pursued his own professional advancement, earned a Ph.D. and achieved his present academic position as chairman of the Computer Science and Electrical Engineering Department at the University of Nevada-Las Vegas;

(d) a marriage in which the marital property, consisting of a small ($10,000.00) equity in a house, household furniture and personal property, a 1982 Buick, a 1984 Plymouth, and a retirement fund, has been equitably divided;[1]

---

[1]We assume for purposes of this appeal that the property has been fairly disposed of because the wife has not appealed the property disposition in the divorce decree. The cars, the personal property, insurance and retirement funds were divided equally. The wife was given the house. The husband testified that he would give or take $10,000.00 for the house, which is run-down and located in a "very dangerous neighborhood in Detroit." This is probably a fair valuation.

The husband took their life-savings with him when he left Detroit and went to Las Vegas. The wife testified that she and her husband had approximately $17,000.00 in a money market account in the Michigan National Bank, $5,000.00 in a checking account in the same bank, around $7,000.00 in two paychecks negotiated and kept by her husband and some money in the husband's credit union account. All in all, the wife claims that about $30,000.00 went to Las Vegas with her husband. The husband admits to taking only about $10,000.00, and the rest is not very well accounted for. Setting off the husband's admittedly taken $10,000.00 in cash against the wife's $10,000.00 in the house would give us an equal property distribution (if it were not for the missing $20,000.00). Whether the trial judge took this $20,000.00 into account when he awarded $500.00 per month alimony, we

(e) a husband who earns $5,600.00 per month and who, by his affidavit, has living expenses of less than $2,000.00 per month;

(f) a wife who is fifty-seven years old, who has no professional skills, who is unemployed and who never has been able to earn any more than $600.00 per month; and

(g) a wife who, after the divorce, has no appreciable assets other than a 1982 Buick, a mortgaged house in Detroit and a future interest in half of her husband's University of Michigan retirement benefits. (The record does not disclose the amount or conditions of the wife's share in these future benefits. She received nothing at the present time.)

Under these circumstances we must agree with Loretta Heim: the trial court did abuse its discretion in making this award. The sum of $500.00 per month until death or remarriage is not, as a matter of law, "just and equitable" under the circumstances of this case. "Before the appellate court will interfere with the trial judge's disposition of the community property of the parties or an alimony award, it must appear on the entire record in the case that the discretion of the trial judge has been abused." Shane v. Shane, 84 Nev. 20, 22, 435 P.2d 753, 755 (1968). Because the trial court has abused its discretion in this regard, we reverse and remand for new trial on the issue of alimony.

Alimony is wholly a creature of statute. Freeman v. Freeman, 79 Nev. 33, 35, 378 P.2d 264, 265 (1963). In 1861 the Legislative Assembly of the Territory of Nevada authorized the court to award support for a wife "as shall be deemed *just and equitable.*" Laws of the Territory of Nevada ch. 33, sec. 27, at 99 (1861) (our emphasis). In 1939 the state legislature passed an amendment to the territorial act which stated that in "granting a divorce, the court may award such alimony to the wife and shall make such disposition of the community and separate property of the parties as shall appear *just and equitable.*" 1939 Nev. Stats. ch. 25, at 18 (our emphasis).

The present day statute, NRS 125.150(1),[2] contains the same "just and equitable" language. Although it could be argued

---

do not know; but it does not appear from the size of the alimony award that any advantage was given to the wife in this regard.

The husband has cross-appealed, claiming that the wife's being awarded the home resulted in a "disproportionate division" of the property. Such a position cannot possibly be sustained under the circumstances of this case.

[2]NRS 125.150(1) reads as follows:

1. In granting a divorce, the court:

(a) May award such alimony to the wife or to the husband, in a specified principal sum or as specified periodic payments; and

syntactically that the quoted language relates only to property division, we interpret the statute to mean that, since 1861, alimony awards must in this jurisdiction be "just and equitable."[3] Furthermore, as required by NRS 125.150(1), the award must be fairly related to the "respective merits" of the parties and to the "condition in which they will be left by the divorce."

The legislative standard was accepted and properly restated in Krick v. Krick, 76 Nev. 52, 59, 348 P.2d 752, 755 (1960). It was correctly noted in *Krick* that NRS 125.150(1) authorizes the trial court to award such alimony (and property) "as shall appear equitable and just, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce."

Although the rule to be applied in making alimony awards is properly stated in *Krick,* the court in *Krick* had no need to apply the rule to any specific decision regarding alimony; therefore, it is not instructive on the question before us now. Since *Krick,* our cases seem to have ignored the legislative standard and, instead, adopted a formulary approach in which we have simply listed "matters to be considered" by the trial court in judging these matters. An example of this matters-to-be-considered approach can be found in Johnson v. Steel, Inc., 94 Nev. 483, 486, 581 P.2d 860, 862 (1978), where we failed to mention the general statutory principles and instead focused on the "limits to their [the trial courts'] discretion," which we defined in terms of the trial courts' being required to follow certain "guidelines" or "matters to be considered," which were borrowed from a previous case, Buchanan v. Buchanan, 90 Nev. 209, 523 P.2d 1 (1974). The so-called "Buchanan guidelines" are simply an inexhaustive list of such common sense considerations as the

---

(b) Shall make such disposition of:

(1) The community property of the parties; and

(2) Any property placed in joint tenancy by the parties on or after July 1, 1979,

as appears just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by the divorce, and to the party through whom the property was acquired, and to the burdens, if any, imposed upon it, for the benefit of the children.

[3]We note that in the present form of the statute, codified in NRS 125.150(1), the two subsections relating to alimony and property distribution are separated by a semicolon, and the language above-quoted could be arguably read to apply only to the property disposition clause. Because, as originally enacted, the language in question clearly applied to both alimony and property awards, and because there is no clear legislative intent to exclude such guidelines from alimony cases, we accept "just and equitable" as the fundamental principle by which the courts must, in the last analysis, judge alimony awards.

financial condition of the parties (property, income, relative earning capacity), duration of the marriage, age and health of the parties and, strangely, "the contribution of each to any property held by them as tenants by the entirety" (a form of tenancy unknown to the jurisprudence of this state). *Buchanan,* 90 Nev. at 215, 523 P.2d at 5.

It would be very easy for readers of the *Johnson-Buchanan* type of case to conclude that an alimony or property disposition decision can be properly made by courts within the "limits of their discretion" simply by steadfastly considering the items on the *Johnson-Buchanan* check list. But the statute requires more than this. The judge must, in making a decision in alimony and property matters, form a judgment as to what is equitable and just, having regard to the respective merits of the parties and to the condition in which they will be left by the divorce.

Applying the stated legislative standard to this case we readily determine that $500.00 per month does not "appear equitable and just, having regard to the respective merits of the parties and to the condition in which they will be left by such divorce." *Krick,* 76 Nev. at 59, 348 P.2d at 755.

We begin our analysis by looking at the condition in which these parties are to be left by the divorce or, more particularly, at their relative financial worth and earning capacities.

The husband earns $5,600.00 per month and is required by the alimony decree to pay something less than nine percent of this to his wife of thirty-five years. He may deduct the $500.00 from his income tax; she must pay income tax on the $500.00. After paying alimony and living expenses he appears to have $3,000.00 left over each month.

The wife is unemployed, but even if we were to assume that she will soon start to earn the $600.00 per month that she was able to earn from time to time in the past, she will have an income of only $1,100.00 per month, alimony included. Without a job she is close to the recognized poverty level.[4] Even if her income amounts to $1,100.00 per month, she will have an income of one-fifth that of her husband.

In sum, the financial condition in which the parties are left is this: the husband, after paying tax-deductible alimony, will have $3,000.00 per month income *after* living expenses, while the wife's financial condition after divorce appears almost certain to result in deprivation, poverty and social degradation.

[4]Poverty level for Mrs. Heim is $5,701.00. U.S. Dept. of Commerce, 1988 Statistical Abstract of the United States 406 (108th ed.).

Analyzing "the respective merits of the parties" mentioned in the statute is difficult in this case as we know little or nothing about the actions or behavior of the parties. "Merits" may refer to the good marital behavior or to the fault of the parties.[5]

When examining the "merits" of the parties the courts might look at the parties' good actions or good behavior or lack thereof in determining what either husband or wife justly deserves. Here the record is silent on issues of the good or bad actions of the parties during the marriage, as well as on issues relating to who instigated the dissolution; accordingly, merit in this sense, not having been brought to the attention of the trial court, will not be considered on this appeal.[6]

Finally, as we must, we look to the overall justice and equity that must inform all alimony and property distribution decrees. As suggested above, what is just and equitable as an alimony award, broadly speaking, can be translated into terms of what is *fair* and what Loretta *deserves* under the circumstances of the case. We have said before that parties in divorce actions must be treated fairly. "The trial court's objective is that of fairness, which it achieves by the judge's personal observation of the parties and the evaluation of the circumstances as they come before him in the arena of the trial court." Winn v. Winn, 86 Nev. 18, 20, 467 P.2d 601, 602 (1970). To determine what is fair, just and equitable one has to look not only to the relative financial condition of the parties and to where they will be "left"

---

[5]According to the *Legal Thesaurus,* by W. Burton (MacMillan, 1980), merit can be equated to "desert" or "deservedness." What a person *deserves* is of course related to what is just and equitable. The *Legal Thesaurus* also equates the word "merit" to "good actions, good behavior, goodness, greatness, honor," thereby raising the subject of relative fault, which is dealt with in footnote 6.

[6]Although Nevada has made incompatibility a ground for divorce and has eliminated the fault concept in establishing grounds for divorce, it has neglected to deal with the question of whether fault should play a role in deciding questions relating to alimony.

Nevada is not alone in this regard; and when the question has been presented to the courts in other states, some have held that in the absence of legislative change corresponding to the enactment of no-fault grounds for divorce, fault should continue to be a factor in awarding alimony or property distribution. Other courts have held that permitting fault to be considered in these situations would be incompatible with the no-fault divorce statutes. *See e.g.,* Annotation, *Fault in Consideration of Alimony Award,* 86 A.L.R.3d 1117 (1978); *Does No-Fault Divorce Portend No-Fault Alimony,* 34 U.Pitt.L.Rev. 486 (1973). Since this issue has not been raised at the trial court level, we do not consider its application here; still, we note, without deciding the point, that the past relations and conduct of the parties might be legitimately considered under the legislative direction that the courts pay regard to the "respective merits of the parties."

by the divorce, but also to all of the circumstances of the marriage—its duration, the age and health of the parties, the special agreements and understandings of the parties and the past relations, conduct and status of the parties. In the present case, one can give little consideration to general principles of justice, equity, deserts and fairness without being struck by the enormous disparity in the status and quality of life of the two marital partners that is brought about largely by the "paltry" amount of alimony awarded to her by the trial court. *See* Orr v. Orr, 458 So.2d 362 (Fla.Dist.Ct.App. 1984). It is quite obvious that Dr. Heim leaves the divorce with almost everything and Mrs. Heim with almost nothing. By "everything" we mean principally Dr. Heim's present capacity (a capacity gained by him through the long-term efforts of both parties) to hold a prestigious position and command a large salary. Rather clearly, the single most valuable product of the Heims' enterprise in the marital partnership is the Ph.D. degree and the high level of professional employability which were gained by Dr. Heim during the marriage.

There are those who would argue that Dr. Heim carried with him, out of the marriage and out of the reach of Mrs. Heim, a species of property sometimes referred to as a "career asset."[7] Whether Dr. Heim's professional degree and present high earning capacity can be considered to be a form of divisible property need not be considered in this case because the issue was not raised below and because, as indicated, property distribution issues are not a part of Loretta Heim's appeal. Nevertheless, in considering the basic principles of equity and justice that must be applied in this case, it must be borne in mind that Dr. Heim leaves the marriage with a Ph.D. acquired during the marital partnership and the capacity to earn $67,000.00 per year, while Loretta Heim leaves with virtually nothing. As put rather acerbically in one case, divorces should not become a "handy vehicle for the summary disposal of old and used wives. A woman is not a breeding cow to be nurtured during her years of fecundity, then conveniently and economically converted to cheap steaks when past her prime." In Re Marriage of Brantner, 67 Cal.App.3d 416, 419, 136 Cal.Rptr. 635, 637 (1977).

The distributive justice called for in these kinds of cases was, in *Brantner,* stated in these terms:

> [I]n those cases in which it is the decision of the parties that the woman becomes the homemaker, the marriage is of

---

[7]This term was first introduced in the article, "Legal Regulation of Marriage Tradition and Change," by Lenore Weitzman, 62 Calif.L.Rev. 1169 (1974), *q.v.*

substantial duration and at separation the wife is to all intents and purposes unemployable, the husband simply has to face up to the fact that his support responsibilities are going to be of extended duration—perhaps for life. This has nothing to do with feminism, sexism, male chauvinism or any other trendy social ideology. It is ordinary common sense, basic decency and simple justice.

*Brantner,* 67 Cal.App.3d at 420, 136 Cal.Rptr. at 637.

In *Johnson,* above, we manifested our concern for women like Loretta Heim, an example of a " 'woman who, for historical and personal reasons, and especially with the long concurrence by her husband, chooses to make her contribution to a marriage by remaining at home *to raise the children of the union. . . .'* " 94 Nev. at 488, 581 P.2d at 863 (quoting Kay v. Kay, 339 N.E.2d 143, (N.Y. 1975)). We expressed concern that such a woman might well "be victimized rather than liberated by being required to enter the working world." 94 Nev. at 488, 581 P.2d (quoting *Kay* 339 N.E.2d at 147).

A fairly recent case which is very close factually to the case at hand lends judicial authority to our conclusion that $500.00 per month alimony cannot be just and equitable under these circumstances. In Orr v. Orr, 458 So.2d 362 (Fla.Dist.Ct.App. 1984), the husband, a prominent judge, earned around $5,000.00 per month. His wife was capable of earning $800.00 per month. The trial court ordered alimony to the wife of $800.00 per month. The court of appeals ruled that, taking into consideration the other factors in the decree, this "paltry amount of alimony," constituted an abuse of discretion. The *Orr* court observed that, as here, the husband, "after the minor adjustment" required to be made under the alimony decree, could "still maintain the life style he has enjoyed for 36 years. The wife cannot." Quoting the Supreme Court of Florida, the appeals court in *Orr* ruled that a "dissolution award should be sufficient to compensate the wife for her contribution to the marriage," and further recognized that "a trial court need not equalize the financial positions of the parties. However, a trial judge must ensure that neither spouse passes automatically from misfortune to prosperity or from prosperity to misfortune, and, in viewing the totality of the circumstances one should not be 'shortchanged.' " 458 So.2d at 363.

It is undeniable that Mrs. Heim has been shortchanged, that divorce has automatically taken her from relative prosperity to misfortune, if not destitution, and that her treatment by the court below was not just and equitable. She is entitled to some fair return based on her thirty-five year contribution to the marital partnership. She is entitled after this long marriage to live as nearly as fairly possible to the station in life that she enjoyed

before the divorce. As things presently stand, "after the minor adjustment" required by Dr. Heim's monthly payment of $500.00 alimony, Dr. Heim will still be able to enjoy over $60,000.00 in annual income with less than $24,000.00 in annual expenses. It is not fair under the circumstances of this case to let Dr. Heim enjoy this kind of income and its accompanying life-style while his wife of thirty-five years must live, if not in poverty, certainly at a very low standard of living.

We will not invade the province of the trial court by determining what is the minimum amount which should be considered as a just and equitable alimony award in this case, but we believe that the award should not necessarily be limited to the $1,500.00 per month prayed for by Loretta Heim. The case should be reexamined by the trial court in the light of the principles announced in this opinion, and a new, fair and just alimony award should be decided upon. Reversed and remanded; the cross-appeal is dismissed.

GUNDERSON, C. J., STEFFEN, YOUNG, and MOWBRAY, JJ., concur.