CVETKA RUTAR, Appellant, *v.* MARJAN RUTAR, Respondent.

No. 21993

March 5, 1992   827 P.2d 829

*Dickerson, Dickerson, Lieberman & Consul,* Las Vegas, for Appellant.

*Darrell Lincoln Clark,* Las Vegas, for Respondent.

---

## OPINION

*Per Curiam:*

Mrs. Rutar (Cvetka) and Mr. Rutar (Marjan) met in Ravne, Yugoslavia, in 1965. At the time, Cvetka was nineteen years old and Marjan was twenty-seven. Both had completed dental technician school, which is the Yugoslavian equivalent of a four-year technical high school in the United States. Marjan worked for eight years as a dental technician in Yugoslavia and then went to Switzerland to receive specialized training. After Cvetka graduated, she worked in Yugoslavia for two years in the same laboratory that employed Marjan before he left for Switzerland.

In 1969, while Marjan was in Switzerland, Cvetka answered an advertisement for a dental technician in Yonkers, New York, and moved to the United States. In 1970, she arranged a position for Marjan with her employer, and he joined her in Yonkers. They married in 1971. They worked together in several laboratories before moving to Las Vegas, Nevada, where they started their own dental laboratory, Emona Dental Studios (EDS Corporation).

Cvetka worked full-time in the laboratory for approximately five years, from the time it opened until after their second child, Michelle, was born in 1976. She then became a full-time homemaker, caring for her and Marjan's two children and the two children from Marjan's previous marriage. The couple put both of Marjan's children through college and graduate school.

After quitting her full-time work to be a homemaker, Cvetka continued to do some of the routine bookkeeping work for the laboratory. For the most part, however, Cvetka had not worked outside the home for approximately fifteen years prior to the divorce. Furthermore, she testified that even when she was working as a technician, she was never able to work without supervision, because she lacked Marjan's specialized skill. She is currently forty-five years old and is pursuing an undergraduate degree in accounting, with the hope of someday attending law school.

Marjan, on the other hand, has worked long hours in his dental laboratory since its commencement. EDS Corporation currently grosses over $300,000 per year, and in 1988, Marjan's personal

income amounted to $154,700. The corporation also pays Marjan's automobile expenses, automobile insurance, and medical insurance. Marjan is fifty-three years old and, in the future, would like to reduce the number of hours he works each day.

Marjan filed for divorce in February of 1988. The district court granted the divorce in January of 1990 and awarded Cvetka $1,000 per month in rehabilitative alimony for a period of three and one-half years. In addition, Cvetka received child support for both children totaling $1,000 per month. The court ordered an equal division of the couple's property, which consisted primarily of a house valued at $550,000 less an $80,000 mortgage, a condominium valued at $225,000 less an $80,000 mortgage, the dental laboratory valued at approximately $140,000, a retirement fund valued at approximately $700,000, and several automobiles. The district court also ruled that Cvetka and the children may continue to live in the house until it is sold. Marjan was ordered to continue paying the upkeep expenses on the house and condominium, amounting to approximately $3,500 per month, with Cvetka reimbursing him for her half of these expenses upon sale of the properties.

Cvetka appeals the award of spousal support, requesting an increase in the $1,000 awarded to $3,500 per month, out of which she would pay her half of the property upkeep expenses as they are incurred. She also requests that spousal support continue for longer than three and one-half years, and that the district court retain jurisdiction to modify the spousal support award following sale of the house and condominium. Finally, she requests that the court award her attorney's fees for this appeal.

The primary issue is the reasonableness of the rehabilitative alimony award. The amount of alimony awarded is within the sound discretion of the district court. *See, e.g.,* Winn v. Winn, 86 Nev. 18, 467 P.2d 601 (1970). However, this discretion is limited by the dictates of NRS 125.150.[1] In Heim v. Heim, 104

---

[1]NRS 125.150(1) states:

    1. In granting a divorce, the court:
    (a) May award such alimony to the wife or to the husband, in a specified principal sum or as specified periodic payments; and
    (b) Shall make such disposition of:
        (1) The community property of the parties; and
        (2) Any property placed in joint tenancy by the parties on or after July 1, 1979,
as appears just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by the divorce, and to the party through whom the property was acquired, and to the burdens, if any, imposed upon it, for the benefit of the children.

Nev. 605, 608, 763 P.2d 678, 679-80 (1988), this court referred to NRS 125.150, which requires that in awarding alimony the court must award an amount that is "just and equitable," having regard to the "respective merits of the parties and to the condition in which they will be left [after] divorce."[2]

This case presents a situation in which both parties contributed substantially to the marriage but are left with vastly disparate earning capacities after the divorce. Similar circumstances were considered in Johnson v. Steel Incorporated, 94 Nev. 483, 489-90, 581 P.2d 860, 864 (1978). In *Johnson*, this court held that the district court had abused its discretion in limiting the wife's alimony award to $1,200 per month for a period of two years.[3] In that case, the parties had been married for twenty years, and the wife retained custody of their two children. *Id.* at 484, 581 P.2d at 861. She had never worked outside the home and had developed no marketable skills, while her husband had built up a profitable business by practicing a trade throughout their twenty-year marriage. His personal gross income was $83,000 per year. *Id.* at 487, 581 P.2d at 863. In the property division, both parties had received assets valued at approximately $350,000. *Id.* at 486, 581 P.2d at 862.

This court classified the two year alimony award in *Johnson* as "rehabilitative alimony." *Id.* As such, the court held that the alimony award was unjust. Applying the guidelines established in Buchanan v. Buchanan, 90 Nev. 209, 215, 523 P.2d 1, 5 (1974),[4] the court held that, given Mrs. Johnson's educational background and lack of work experience, there was no evidence in the record to suggest that she actually would be able to earn enough to meet her expenses after only two years of training. *Johnson,* 94 Nev. at 489, 581 P.2d at 864. Furthermore, this court noted the injustice inherent in denying a wife reasonable alimony where she has

---

[2]We have not, and do not now express any opinion as to the meaning of the term "respective merits of the parties," which by the express language of the statute *must* be considered in all cases involving judicial awards of alimony and marital property distribution.

[3]The court also awarded child support totaling $500 per month. Johnson v. Steel Incorporated, 94 Nev. 483, 484, 581 P.2d 860, 861 (1978).

[4]The guidelines for determining the amount of alimony to be awarded have been set forth as follows:

[T]he financial condition of the parties; the nature and value of their respective property; the contribution of each to any property held by them as tenants by the entirety; the duration of the marriage; the husband's income, his earning capacity, his age, health and ability to labor; and the wife's age, health, station and ability to earn a living.

*Johnson,* 94 Nev. at 486-87, 581 P.2d at 862 (quoting Buchanan v. Buchanan, 90 Nev. 209, 215, 523 P.2d 1, 5 (1974)).

been a full-time homemaker and caretaker of the children with her husband's agreement and to the parties' mutual benefit. *See Johnson* at 487-89, 581 P.2d at 862-64.

Similarly, in Heim v. Heim, 104 Nev. 605, 606-08, 763 P.2d 678-81 (1988), this court held that an alimony award in the amount of $500 per month was unjust and inequitable as a matter of law where the parties had been married thirty-five years, the wife had raised the couple's six children, and the husband, who had earned his doctorate degree during the marriage, had a gross income of $6,500 per month. The court noted that even if the wife were able to earn the highest salary she had ever earned— $600 per month—this amount combined with alimony awarded would equal only one-fifth of her husband's income. *Id.* at 609, 763 P.2d at 681. In reversing the district court's alimony award, this court stated that the "Buchanan guidelines" provide a useful but inexhaustive list, and that the judge's primary focus must be upon the justness and equity of the situation with regard to the condition in which the parties will be left after the divorce. *Id.* at 608, 763 P.2d at 680.

The instant case approximates *Johnson* and *Heim* with respect to the relative condition in which the parties will be left following the divorce. Cvetka and Marjan were married for eighteen years prior to their divorce. She was the primary caretaker of their two children and his two children from his previous marriage. In addition, Cvetka had been out of the work force for twelve years, and none of the property she received as a result of the divorce was income-producing. Although she worked full-time to help build the family business until 1976, the record suggests that she was unable to earn what Marjan earns as a dental technician. Although both parties graduated from a dental technician school in Yugoslavia, their educational backgrounds are distinguishable because Marjan apprenticed with a skilled technician in Switzerland. Consequently, he was able to do highly-skilled porcelain work. Cvetka, on the other hand, was less skilled as a dental technician, as evidenced by the disparity in their salaries when they both were working for the same laboratory. Cvetka testified that she is capable of doing only "one phase of the tooth" and that she has never worked independently. Furthermore, Cvetka's testimony that her bookkeeping work was limited to sending bills and recording receipts contradicts Marjan's claim that she is a skilled financial manager.

Finally, Cvetka's current educational pursuits will not necessary enable her to support herself in the manner to which she had been accustomed. Cvetka is forty-five years old and has significant difficulties with the English language. Moreover, she still is raising the parties' two minor children. Therefore, it will be

difficult for her to complete an undergraduate degree before her three and one-half year alimony award terminates. She estimates she will be about fifty years old when she receives her undergraduate degree.

Under the district court's ruling, Marjan must pay Cvetka only $2,000 per month in alimony and child support out of the over $12,800 per month he receives in gross income. Of this amount, the alimony is tax deductible. Heim v. Heim, 104 Nev. 605, 609, 763 P.2d 678, 681 (1988).

Cvetka, on the other hand, still must pay half of the upkeep on the house and condominium when the properties are sold, and in the meantime, she receives no tax break for these payments. Furthermore, her $1,000 per month in alimony is taxed. *Id.* at 609, 763 P.2d at 681. Thus, Cvetka and the children will be living on less than $24,000 per year during the duration of the alimony award, a standard of living far below that to which they have been accustomed. Meanwhile, Marjan will have a gross income of approximately $150,000 per year which, subtracting alimony and child support, would leave him with approximately $130,000 per year.

Given the respective circumstances in which the parties have been left by the divorce, we conclude that the district court's award of alimony was inadequate. Cvetka requests an increase in the alimony award to $3,500 per month, out of which she would pay her half of the maintenance expenses on the house and condominium as they are incurred, with the court retaining jurisdiction to modify this award after the sale of these properties. In the interest of simplicity, we hold that the alimony award should be increased by $700 per month to a total of $1,700 per month, which is approximately what Cvetka would have been left with after property upkeep payments under the plan she proposed. Marjan is still required to pay the upkeep on the house and condominium, with Cvetka reimbursing him one-half of the expenses upon sale of these properties. Furthermore, we extend the duration of the alimony award to eight years, and we direct the district court to retain jurisdiction over the alimony award and the property division. Finally, we hold the need for an award of attorney's fees to be obviated by the increase in the alimony awarded, which should provide adequate available resources upon which Cvetka may draw.

Accordingly, we reverse the alimony award made by the district court, increase it as indicated, and remand this case to the district court for any further proceedings consistent with this opinion.