ROBERT N. FICK, APPELLANT, v. BERNICE W. FICK, RESPONDENT.

No. 22515

May 7, 1993                                    851 P.2d 445

*Beckley, Singleton, DeLanoy, Jemison & List, James L. Edwards,* and *Daniel F. Polsenberg,* Las Vegas, for Appellant.

*Penney & Penney,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

### THE FACTS

In 1981, appellant Robert N. Fick ("Robert") and respondent Bernice W. Fick ("Bernice") met and began living together. They married in 1984. Shortly before their wedding, the couple signed a prenuptial agreement drafted by Robert. The agreement set forth, among other things, a provision waiving Bernice and Robert's rights to alimony upon divorce. The corpus of the agreement acknowledged that each party attached a schedule of their various premarital assets and obligations. However, Robert did not attach his schedule until a year after they signed the agreement.

In 1986, the couple purchased a home in Las Vegas ("Las Vegas house") for approximately $55,000. In 1988, the couple also purchased an undeveloped lot in Cold Creek, Nevada (the "lot").

Bernice filed for divorce in 1989. After a bench trial, the district court entered a divorce decree and issued findings of fact and conclusions of law ("findings"). In the findings, the court: (1) characterized the lot as community property and ordered it sold; (2) valued the Las Vegas house at $60,000; (3) declared the alimony waiver provisions of the prenuptial agreement unen-

forceable; and (4) granted Bernice $14,400 in unpaid support, $3,000 in rehabilitative alimony and $3,000 in attorney's fees.[1] Robert appealed.

On appeal, Robert argues that the district court: (1) improperly divided and characterized the lot as community property because the parties allegedly held the lot in joint tenancy; (2) erred in valuing the Las Vegas home at $60,000; (3) wrongly invalidated the couple's prenuptial agreement; and (4) incorrectly awarded rehabilitative alimony. We affirm.

## DISCUSSION

### The Lot's Characterization and Division

Generally, the law presumes that all property acquired during marriage constitutes community property. NRS 123.220. Spouses may also hold property as joint tenants. NRS 123.030.

A valid deed showing that a married couple holds title to property in joint tenancy qualifies as clear and certain proof to overcome the community property presumption. Such a deed raises a rebuttable presumption that the property is, in fact, a joint tenancy—the separate property of each spouse. Forrest v. Forrest, 99 Nev. 602, 668 P.2d 275 (1983). Nevertheless, pursuant to NRS 125.150(1)(b), at divorce the district court "shall" justly and equitably divide a couple's community property assets *and* all property placed in joint tenancy after July 1, 1979.

The district court found that the lot was community property and ordered it sold at fair market value with the proceeds divided equally between the parties.

On appeal, Robert argues that the district court erred in characterizing the lot as community property. He also asserts that the court lacked jurisdiction to divide the property because the couple held the lot in joint tenancy with Robert's infant grandson, Arthur. Robert also relates that Bernice did not serve Arthur with notice or join him as a party, and thus, the court prejudiced Arthur's interest by ordering the parcel sold. We are not persuaded by Robert's contentions.

First, at trial Robert did not object to the lot's characterization as community property. Throughout the entire litigation in the district court, Robert never questioned the characterization of the lot as community property and, in fact, numerous times he

---

[1] At oral argument, Robert's attorney stated that Robert has failed to tender the awarded support, alimony and attorney's fees.

labelled the lot a community asset.[2] Indeed a failure to object in the trial court bars the subsequent review of the objection. McCullough v. State, 99 Nev. 72, 657 P.2d 1157 (1983). Additionally, Robert failed to move for post-judgment relief or utilize any of the available procedures to preserve his objection on this issue. Essentially then, Robert raised this issue for the first time on appeal.[3] In turn, we need not consider it. McKay v. City of Las Vegas, 106 Nev. 203, 789 P.2d 584 (1990).

However, assuming that we address this issue and conclude that the Ficks possessed a valid deed registering the lot as joint tenancy, NRS 125.150 allows for the equitable division of community property and joint tenancies, and thus the district court's alleged error in characterizing the land is harmless.

Second, we fail to see how the court's division prejudiced Arthur's interest in the lot. The decree's language requiring the division and sale of the lot pertains *only* to Robert and Bernice's interest in the parcel. As such, the order requires them to sell their proportionate interest in the lot, while leaving Arthur's share intact and unaffected.

Third, we conclude that Robert lacks standing to raise Arthur's interest. Indeed, Robert incurred no apparent injury or harm by the court's "prejudicing" Arthur's property interest. In fact, Robert does not assert that he is Arthur's legal guardian. Thus, he has no right to allege error on Arthur's behalf.

### Valuation of the Las Vegas House

The district court valued the Las Vegas house at $60,000. On

---

[2]Evidence in the record indicates that Robert characterized the lot as community property in his answer to the complaint, in his post-trial memorandum, during his cross-examination and in his counsel's closing statement.

[3]Robert apparently advanced this issue for the first time in a post-judgment motion to the district court pursuant to Huneycutt v. Huneycutt, 94 Nev. 79, 575 P.2d 585 (1978). In fact, Robert's reply brief suggests that an implicit purpose of his *Huneycutt* motion was to preserve this matter for appeal. However, Robert filed his *Huneycutt* motion after this appeal was pending. In turn, we conclude that the *Huneycutt* motion failed to preserve this issue for appeal. Moreover, at oral argument the parties advised us that the district court had recently denied the *Huneycutt* motion. Nonetheless, we hold that even had the district court granted the motion, filing a *Huneycutt* motion does not constitute a proper method to preserve arguments or objections for appeal that the parties failed to raise in the lower court.

appeal, Robert argues that evidence adduced at trial failed to support the district court's valuation. We disagree. We will not set aside findings of fact unless they are clearly erroneous. Hermann Trust v. Varco-Pruden Buildings, 106 Nev. 564, 796 P.2d 590 (1990).

Although both parties valued the house at $65,000, evidence at trial revealed that the house needed considerable repairs. Indeed, the house's roof leaked, the toilets overflowed and the heater did not function. In turn, given the house's state of disrepair, the judge chose a figure that reflected a reasonable market value of the house. Thus, we conclude that substantial evidence supported the district court's valuation.

### The Prenuptial Agreement's Alimony Waiver Provisions

We review the validity of premarital agreements de novo. A premarital agreement entered into before October 1, 1989, is enforceable if the agreement conforms with either the requirements of NRS Chapter 123A, the Uniform Premarital Agreement Act ("UPAA"), or Nevada common law. Sogg v. Nevada State Bank, 108 Nev. 308, 832 P.2d 781 (1992); NRS 123A.080(3).

Pursuant to the UPAA, a premarital agreement is enforceable without consideration if it is in writing and signed by both parties. NRS 123A.040. A premarital agreement may, among other things, eliminate alimony. NRS 123A.050. However, a prenuptial agreement is unenforceable if it was unconscionable at execution, involuntarily signed, or the parties did not fully disclose their assets and obligations *before* the agreement's execution. NRS 123A.080. Under the common law, a prenuptial agreement is enforceable unless it is "unconscionable, obtained through fraud, misrepresentation, material nondisclosure or duress." Buettner v. Buettner, 89 Nev. 39, 45, 505 P.2d 600, 604 (1973). Under *Sogg,* one overcomes the presumption of invalidity by showing that the disadvantaged party: (1) had ample opportunity to consult an attorney, (2) was not coerced, (3) possessed substantial business acumen, and (4) understood the financial resources of the other party and the rights being forfeited under the agreement. *Sogg,* 108 Nev. at 312, 832 P.2d at 784.

In the instant case, the district court invalidated the alimony waiver provisions of Bernice and Robert's prenuptial agreement. We concur.

Although Bernice voluntarily signed the agreement, had an opportunity to consult with legal counsel, was not coerced and

possessed the acumen to understand the transaction, we hold that the agreement is unenforceable because Robert did not fully disclose his assets and obligations before Bernice signed it.

Both parties agree that Robert attached his inventory of assets and that Bernice initialed that schedule long after the couple exchanged marital vows. In fact, at trial Robert testified that when he and Bernice signed the agreement, he had not finished compiling his schedule of assets. Notwithstanding that Robert and Bernice cohabitated and started a business together prior to marriage, we conclude that given the extensive list of Robert's possessions, Bernice could not have known the full magnitude of Robert's assets and obligations before marriage.

Indeed, Robert's late disclosure contravenes both the clear language of NRS 123A.080(1)(c) and the spirit of *Buettner* and *Sogg*. Additionally, we hold that Bernice's initialing of Robert's asset schedule does not satisfy the disclosure requirement because full disclosure *must* occur *before* contract execution. NRS 123A.080(1)(c). In this context, other jurisdictions also support our interpretation of full disclosure prior to signing. In Re Estate of Lopata, 641 P.2d 952 (Colo. 1982); DeLorean v. DeLorean, 511 A.2d 1257 (N.J.Super.Ct.Ch.Div., 1986); Laub v. Laub, 505 A.2d 290 (Pa.Super.Ct. 1986).

Moreover, we have acknowledged that fiancés share a confidential, fiduciary relationship; each has a responsibility to act with good faith and fairness to the other. *Sogg,* 108 Nev. at 312, 832 P.2d at 784. Such a responsibility contemplates that each party will make a full and fair disclosure prior to the execution of a premarital agreement. Robert shirked this responsibility.

Thus, we conclude that the district court properly declared the alimony provisions of the Ficks' premarital agreement unenforceable.

### Rehabilitative Alimony Award

In determining whether to grant alimony, as well as the amount thereof, the district courts enjoy wide discretion. Rutar v. Rutar, 108 Nev. 203, 827 P.2d 829 (1992). Specifically, the court may grant alimony pursuant to NRS 125.150(8) for re-education and re-training to facilitate a spouse's re-entry into the labor market. However, a grant pursuant to subsection (8) requires the court to establish a time frame for the recipient to commence re-education. NRS 125.150(9).

The district court awarded Bernice $3,000 of rehabilitative alimony to gain re-training in her pre-marital profession.

Robert argues that the court erred in awarding rehabilitative alimony. He also asserts that even if the district court properly

awarded rehabilitative alimony under NRS 125.150(9), the court erred by failing to establish a time frame for Bernice to begin her re-training.

A review of the record reveals that the district court heard substantial evidence that Bernice no longer commanded the skills necessary to re-enter the labor market. The lower court also learned of the disparity between Bernice's and Robert's respective earning potential. Bernice possessed a high school education while Robert had obtained a Ph.D., M.B.A., M.P.A., M.A. in general studies, economics and business and a teaching credential. Thus we hold that the district court did not abuse its discretion in granting Bernice $3,000 to update her job skills.

Nonetheless, we conclude that the district court failed to establish a time frame for Bernice to commence her re-training as required by NRS 125.150(9). As a result, we remand this matter to the district court. On remand the district court is ordered to establish a time frame pursuant to NRS 125.150(9) for Bernice to commence her re-education.

We have carefully considered the other issues raised and conclude that they lack merit or need not be addressed given our disposition of this appeal. Accordingly, we affirm the district court's judgment in part and remand in part.[4]

---

[4]THE HONORABLE CHARLES E. SPRINGER, Justice, did not participate in the decision of this matter.