OPINION
 

 By the Court,
 

 Agosti, J.:
 

 In this appeal we are asked if marital misconduct may be considered in determining an award of alimony.
 

 
 *994
 
 Appellant Glenda M. Rodriguez and respondent Antonio Rodriguez were married on September 10, 1973. Antonio filed for divorce on September 21, 1994. The matter proceeded to trial in January 1996. At the time of trial, Antonio was the catering director for the Sands Hotel in Las Vegas, earning at least $75,000.00 a year. Glenda was employed as a high school hall monitor for the Clark County School District. She earned $10.11 per hour and worked thirty-five hours a week during the nine-month school year. Her annual income was approximately $14,000.00.
 

 The district court entered a minute order on August 8, 1996, indicating its decision. The court entered its Findings of Fact, Conclusions of Law and Decree of Divorce on February 3, 1997. Despite the fact that Antonio and Glenda had been married for over twenty-one years, and the fact that Antonio earned considerably more than Glenda, the trial judge refused to award Glenda alimony.
 

 The district court denied Glenda’s request for alimony because she’d had an extra-marital affair, had initiated the parties’ separation by leaving the family to pursue the extra-marital relationship and had taken $10,000.00 from their adult son’s personal injury settlement.
 
 [1]
 
 In making its decision the court also found significance in the facts that Antonio had agreed to repay the money that had been taken from the son, that Antonio was to have custody of the parties’ sixteen-year-old minor daughter and that Glenda was employed. The court stated in the Findings of Fact, Conclusions of Law and Decree of Divorce that
 

 [wjhile neither party is without fault in this case (as evidenced by their conversion of [the son’s] money), the Court finds Defendant was more at fault for the divorce than Plaintiff by her abandonment of the marital home and children and her admitted involvement in an extramarital relationship prior to the separation of the parties.
 

 We conclude that the district court clearly erred by considering Glenda’s fault in deciding whether to award her alimony.
 

 The district court relied on dictum in Heim v. Heim, 104 Nev. 605, 763 P.2d 678 (1988), for the proposition that marital misconduct or fault may be considered in determining an award of alimony. When we decided
 
 Heim,
 
 NRS 125.150(1) read as follows:
 

 1. In granting a divorce, the court:
 

 (a) May award such alimony to the wife or to the husband,
 
 *995
 
 in a specified principal sum or as specified periodic payments; and
 

 (b) Shall make such disposition of:
 

 (1) The community property of the parties; and
 

 (2) Any property placed in joint tenancy by the parties on or after July 1, 1979,
 

 as appears just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by the divorce, and to the party through whom the property was acquired, and to the burdens, if any, imposed upon it, for the benefit of the children.
 

 Heim,
 
 104 Nev. at 607-08 n.2, 763 P.2d at 679 n.2. The
 
 Heim
 
 court construed the statute to mean that district courts were authorized to award alimony and to divide property as appears just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by the divorce.
 
 Id.
 
 at 608, 763 P.2d at 680. The dictum in
 
 Heim
 
 which inspired the trial judge to consider Glenda’s marital misconduct and to punish her by refusing her alimony request is as follows: “[wjhen examining the ‘merits’ of the parties the courts might look at the parties’ good actions or good behavior or lack thereof in determining what either husband or wife justly deserves.”
 
 Id.
 
 at 610, 763 P.2d at 681. The
 
 Heim
 
 court’s reference to “merits” was based upon its view that the statutory language ‘ ‘having regard to the respective merits of the parties” applied to alimony considerations. In a footnote, the
 
 Heim
 
 court recognized a potential conflict between the concept of a no-fault divorce and the consideration of marital misconduct in the determination of alimony:
 

 Although Nevada has made incompatibility a ground for divorce and has eliminated the fault concept in establishing grounds for divorce, it has neglected to deal with the question of whether fault should play a role in deciding questions relating to alimony.
 

 Nevada is not alone in this regard; and when the question has been presented to the courts in other states, some have held that in the absence of legislative change corresponding to the enactment of no-fault grounds for divorce, fault should continue to be a factor in awarding alimony or property distribution. Other courts have held that permitting fault to be considered in these situations would be incompatible with the no-fault divorce statutes. Since this issue has not been raised at the trial court level, we do not consider its application here; still, we note, without deciding the point, that the past relations and conduct of the parties might be legitimately considered under the legislative direction that the courts pay regard to the “respective merits of the parties.”
 

 
 *996
 

 Id.
 
 at 610 n.6, 763 P.2d at 681 n.6. (citations omitted). Four years later, in Rutar v. Rutar, 108 Nev. 203, 206 n.2, 827 P.2d 829, 831 n.2 (1992), we stated that “[w]e have not, and do not now express any opinion as to the meaning of the term ‘respective merits of the parties,’ which by the express language of the statute
 
 must
 
 be considered in all cases involving judicial awards of alimony and marital property distribution.’ ’
 

 In 1993, the legislature resolved the potential conflict between the concept of a no-fault divorce on the one hand and the consideration of marital misconduct on the other hand when determining an award of alimony or when dividing community property. Along with other changes, the legislature simply deleted the phrase “having regard to the respective merits of the parties” from NRS 125.150(1).
 
 [2]
 

 See
 
 1993 Nev. Stat., ch. 135, § 1, at 240. With the 1993 amendment, NRS 125.150(1) reads as follows:
 

 1. In granting a divorce, the court:
 

 (a) May award such alimony to the wife or to the husband, in a specified principal sum or as specified periodic payments, as appears just and equitable; and
 

 (b) Shall, to the extent practicable, make an equal disposition of the community property of the parties, except that the court may make an unequal disposition of the community property in such proportions as it deems just if the court finds a compelling reason to do so and sets forth in writing the reasons for making the unequal disposition.
 
 [3]
 

 Our examination of the legislative history of the 1993 amendment reveals that the legislature deleted the noted language in direct response to this court’s decisions which suggested that marital fault can be considered in determining alimony and property distribution.
 
 See
 
 Hearing on A.B. 347 Before the Assembly Committee on Judiciary, 67th Leg. (Nev., April 7, 1993); Hearing on A.B. 347 Before the Senate Committee on Judiciary, 67th Leg. (Nev., April 30, 1993). The amendment reflects the legislature’s intention that as a no-fault divorce state, the fault or bad conduct of a party should not be considered when deciding the issues of alimony and community property division.
 
 See id.
 
 The legislature also chose to separately address alimony and community property
 
 *997
 
 division. This is significant because for the first time the legislature clarified that different considerations exist for each. Alimony is to be awarded according to principles of what is “just and equitable.” Community property is to be divided equally unless a specifically stated compelling reason exists for making an unequal division.
 
 [4]
 

 Since the legislative pronouncement of 1993, we have not considered the effect of the 1993 amendment as it relates to alimony, but we have considered the amendment’s effect on the division of community property and debts. We first took the amendment into account in Lofgren v. Lofgren, 112 Nev. 1282, 926 P.2d 296 (1996), where we recognized that financial misconduct may constitute the requisite “compelling reason” for making an unequal division of community property. We specifically held that “if community property is lost, expended or destroyed through the intentional misconduct of one spouse, the court may consider such misconduct as a compelling reason for making an unequal disposition of community property and may appropriately augment the other spouse’s share of the remaining community property.”
 
 Id.
 
 at 1283, 926 P.2d at 297.
 

 A year after
 
 Lofgren
 
 was decided, we decided the case of Wheeler v. Upton-Wheeler, 113 Nev. 1185, 946 P.2d 200 (1997). We concluded in
 
 Wheeler
 
 that the district court erred by relying on evidence of the husband’s spousal abuse as a basis for making an unequal division of the parties’ community property.
 
 Id.
 
 at 1190, 946 P.2d at 203. We noted that by amending NRS 125.150(1) in 1993, the legislature sought to preserve the concept of no-fault divorce in Nevada.
 
 See id.
 
 at 1189-90, 946 P.2d at 203. We also recognized the legislature’s determination that “in divorce proceedings, testimony regarding the relative faults of the parties could have an adverse effect on the children and could increase the expense of litigation.”
 
 Id.
 
 at 1190, 946 P.2d at 203 (citing Hearing on A.B. [3]47 Before the Senate Committee on Judiciary, 67th Leg. (Nev., May 10, 1993, and April 30, 1993)).
 

 
 *998
 
 However, in
 
 Wheeler,
 
 we also recognized that sometimes marital misconduct results in adverse
 
 economic
 
 consequences for one of the parties. 113 Nev. at 1190, 946 P.2d at 203. We determined that a district court may consider evidence of the economic consequences of marital misconduct in determining whether an unequal division of community property is warranted.
 
 See id.
 

 As we noted in
 
 Heim,
 
 “[a]limony is wholly a creature of statute.”
 
 Id.
 
 at 607, 763 P.2d at 679. The legislature has elected to distinguish the appropriate considerations for the division of community property from those which exist for an award of alimony. The legislature has devised a scheme that permits the court to deviate from the rule requiring an equal division of community property if a compelling reason exists for doing so. However, the legislature has not seen fit to permit the court to withhold an otherwise just and equitable alimony award for any similar reason.
 

 According to both the legislative history and the plain language of the statute, a judge is not permitted to consider the fault or misconduct of either of the parties when considering an award of alimony. We hold that when considering an award of alimony, the court may not consider either party’s misconduct or fault. We perceive no reason to engraft the ‘ ‘misconduct resulting in an economic impact” exception to the alimony portion of the statute. We have previously determined in
 
 Wheeler
 
 that the relevance of fault or misconduct is limited to instances where, because of its economic impact on one of the parties, fault or misconduct constitutes a compelling reason to deviate from an equal division of the community estate.
 

 Moreover, an exception is unnecessary. Nevada has well-settled case law that provides guidelines for the trial court to consider when making a just and equitable alimony award. Commonly referred to as the
 
 “Buchanan
 
 factors,” these guidelines were enunciated over twenty-five years ago in Buchanan v. Buchanan, 90 Nev. 209, 523 P.2d 1 (1974). They include:
 

 the financial condition of the parties; the nature and value of [the parties’] respective property; the contribution of each to any property held by them as tenants by the entirety; the duration of the marriage; the husband’s income, his earning capacity, his age, health and ability to labor; and the wife’s age, health, station and ability to earn a living.
 

 Id.
 
 at 215, 523 P.2d at 5. While we acknowledge the archaic tenor of the language, as well as the unnecessary variation between the
 
 *?
 
 considerations articulated for the husband and the wife, we also note with approval the commonsense approach that permeates these points. And the durability of the factors over time is a testament to their viability.
 

 So, for example, if one spouse commits repetitive acts of physical or mental abuse against the other, causing a condition in the injured spouse which generates expense or affects that person’s ability to work, the physical and/or mental condition caused by the misconduct can be taken into account in two ways: first, as a compelling reason to make an unequal distribution of property or second, without considering evidence of fault or misconduct, the court in deciding alimony will, per
 
 Buchanan,
 
 take that spouse’s physical and mental condition into account when examining his or her financial condition, health and ability to work.
 

 In
 
 Heim,
 
 we characterized the
 
 Buchanan
 
 guidelines as “simply an inexhaustive list of . . . common sense considerations.”
 
 Heim,
 
 104 Nev. at 608, 763 P.2d at 680. We reiterate today that the
 
 Buchanan
 
 factors are indeed guidelines and that other factors conceivably could from time to time be relevant as well to the trial court’s decision on the question of alimony.
 
 [5]
 
 However, marital misconduct or fault will not be one of the additional factors assisting the trial court in properly exercising its discretion according to just and equitable principles. To allow otherwise is inimical to the statute’s legislative history and plain meaning.
 

 In this case, the trial judge abused his discretion when he considered Glenda’s extra-marital affair in determining that she should not receive alimony. Given the gross disparity between the parties’ incomes, Glenda was obviously being punished for her affair. Alimony is not a sword to level the wrongdoer. Alimony is not a prize to reward virtue. Alimony is financial support paid from one spouse to the other whenever justice and equity require it. Alimony may not be awarded or denied in an arbitrary or uncontrolled abuse of discretion.
 

 The
 
 Buchanan
 
 factors assist the trial court in exercising its discretion when considering an award. Applying the
 
 Buchanan
 
 factors to this case inevitably compels the conclusion that the trial judge abused his discretion in denying Glenda’s request for alimony. The parties were married for twenty-one years when they separated, and for twenty-three years when the decree was entered.
 

 The divorce decree contains little information about the financial condition of the parties or their community property or debts.
 
 *1000
 
 The decree refers to a home as an item of community property which was sold. Apparently by the agreement of the parties, Glenda was to receive $6,000.00 from Antonio for her interest in the home, plus interest at the legal rate, all to be paid to Glenda, but in the form of partial payments at the rate of $250.00 per month until satisfied.
 

 The trial judge granted Glenda an award of attorney’s fees in the amount of $2,500.00 and allowed Antonio to satisfy that obligation at the rate of $100.00 per month. The judge also ordered Glenda to pay Antonio $277.00 a month for the support of the parties’ minor daughter. The judge permitted Glenda to pay Antonio $177.00 a month, which is the difference between the monthly child support she was required to pay and the monthly pay-off for the attorney’s fees he was required to pay.
 

 No reference is made in either the decree or the record to any source of money for either party independent of their earnings.
 
 [6]
 
 Antonio earns a comfortable annual income of $75,000.00 which is significantly larger than Glenda’s annual income of approximately $14,000.00. Glenda was forty-two years old and Antonio was forty-three years old when the decree was entered. Antonio is healthy and quite able to work. Glenda is ill. The trial judge acknowledged her condition and consequent limited ability to earn a living at the conclusion of trial, stating:
 

 Her illness. She has told me she is ill. We can see she is ill to a certain extent, but she also works. ... I am convinced that she has certain medical problems, but that those problems do not prohibit her from working at least to the extent that she works.
 
 So I am presuming that she has the ability to earn the money that she is making, no more, no less,
 
 but that she has that same capacity in the summer either at that job or another job for purpose of what we will do with both parties.
 

 (Emphasis added.) We conclude that Glenda did possess a meritorious claim for alimony as reference to the
 
 Buchanan
 
 factors readily reveals. Glenda, a middle-aged woman with health problems, was forced to survive on a meager income after enjoying a comfortable lifestyle within a marriage of lengthy duration. It is not anticipated that she will ever be able to earn more. In con
 
 *1001
 
 trast, Antonio maintains the financial ability to continue to live comfortably. He has risen steadily to a management position in the casino industry. There is no justice or equity in denying alimony to a woman who, because of her physical condition, will likely never earn more than the small amount she now earns.
 
 [7]
 
 Glenda has been impoverished as a result of the divorce, while Antonio’s financial security is assured because of his far superior earning power. The trial judge should have analyzed the merits of Glenda’s request for alimony with reference to these factors. The trial judge abused his discretion in failing to award alimony in a just and equitable sum.
 

 Therefore, we reverse the portion of the district court’s divorce decree denying an award of alimony to Glenda and remand this matter so that the district court may determine an amount of alimony that appears just and equitable, without consideration of her extra-marital affair or other perceived fault or misconduct.
 
 [8]
 

 Rose, C. J., Young, Maupin, Shearing, Leavitt and Becker, JJ., concur.
 

 [1]
 

 The district court found that both Glenda and Antonio had wrongfully taken money from their son’s settlement.
 

 [2]
 

 Thus, at the time the district court adjudicated Glenda and Antonio’s divorce, the statutory language upon which the unfortunate dictum in
 
 Heim
 
 was based had been deleted from NRS 125.150. The Findings of Fact, Conclusions of Law and Decree of Divorce do not reference NRS 125.150(1) in either its form before or after the amendment. The
 
 Heim
 
 decision was the only legal authority cited in determining alimony.
 

 [3]
 

 The language of NRS 125.150(1) has not changed since 1993 and remains current. Amendments were made to NRS 125.150 in 1995 and 1999 which did not change subsection (1).
 

 [4]
 

 The amendment also deleted from the statute the requirement that the court “make such” disposition of the community property of the parties “as appears just and equitable, having regard to the respective merits of the parties and to the condition in which they will be left by the divorce, and to the party through whom the property was acquired, and to the burdens, if any, imposed upon it, for the benefit of the children.” 1993 Nev. Stat., ch. 135, § 1, at 240. In its place, the legislature added the requirement that the court, “to the extent practicable,” shall make an equal disposition of the parties’ community property, “except that the court may make an unequal disposition of the community property in such proportions as it deems just if the court finds a compelling reason to do so and sets forth in writing the reasons for making the unequal disposition.”
 
 Id.
 
 The amendment clearly requires an equal rather than “equitable” division of the community estate.
 

 [5]
 

 The existence of specialized education or training or level of marketable skills attained by each spouse are examples which come to mind.
 

 [6]
 

 Antonio testified that he held approximately $10,000.00 in a 401k plan. A representative from the Culinary Union Pension Office testified to the retirement benefits that Antonio had accrued through the time that he was a member of that union. Although the trial judge, at the conclusion of the trial, stated orally that each of these were community assets to be divided equally, they are not mentioned in the decree. Upon remand, the decree should be amended to reflect the trial court’s rulings, or Glenda will have no mechanism by which to enforce the court’s intended disposition of the funds.
 

 [7]
 

 The trial judge did find that Glenda could earn more if she pursued summer employment with the Clark County School District. Assuming she did so, she would realize an annual income of approximately $18,500.00.
 

 [8]
 

 On appeal, Glenda also contended that the district court miscalculated the amount of her child support obligation. At oral argument, Antonio’s counsel represented to this court that the daughter is now over eighteen years of age and that Antonio is not seeking to collect child support arrearages. Therefore, this issue is moot.